## Bostwick's Estate.

*Partnership—Liability for losses—Agreement as to gas.*

1. Where parties agree to contribute to a common enterprise and share the profits in proportion to their contributions, the inference is that they expect to divide the losses in the same proportions unless a contrary intention appears.

2. There is no such inference, however, where one party sells to another by a bill of sale casing-head gas to be used by the purchaser in the manufacture of gasoline, for which the seller is to receive half the net profits.

*Partnership—Liability of estate of deceased partner for debts of partnership—Jurisdiction of Orphans' Court—Acts of April 11, 1848, and March 26, 1915.*

3. A debt owed by a partnership may be recovered in the Orphans' Court in the first instance from the estate of a deceased partner.

4. The Uniform Partnership Act of March 26, 1915, P. L. 18, expressly saved from repeal the Act of April 11, 1848, P. L. 536, by which recovery was given against a deceased partner for a partnership debt.

Audit of account. O. C. Washington Co., Feb. T., 1926, No. 36.

*Donnan & Miller,* for accountant; *Lloyd O. Hart,* contra.

CRUMRINE, P. J., April 28, 1926.—In May, 1917, the decedent and certain other persons, describing themselves as "partners, operating as the Collins

Oil Company," entered into a contract with the Crystal Petroleum Company, a West Virginia corporation. This agreement recited that the Collins Oil Company owned a certain oil and gas lease on the farm of H. W. Hartley, in Brooke County, West Virginia, on which farm they had a well producing oil and casing-head gas; that said casing-head gas was being wasted, and the Crystal Petroleum Company was willing to purchase it for the purpose of extracting gasoline therefrom.

By this agreement, the Collins Oil Company sells to the Crystal Petroleum Company all the casing-head gas produced in this well, the consideration therefor evidently being the covenants of the second party and the benefits to accrue to the first party therefrom. No cash consideration is named.

The second party—Crystal Petroleum Company—then covenants to erect a plant for extracting gasoline, and to "furnish all material and labor necessary to the erection, operation and upkeep thereof." It also agrees to "furnish all the labor necessary" to "pump the oil produced on the said lease."

It is then provided that the net profits arising from the oil and gas shall be equally divided between the two companies, an accounting to be had each month.

In pursuance of this agreement, the Crystal Petroleum Company erected the necessary plant for extracting gasoline and proceeded to operate it in the year 1917. Statements of earnings and expenses were submitted periodically by Crystal Petroleum Company and profits divided. The earnings include proceeds of sales from gasoline, oil and residue gas, and credits are taken for all expenses in regard to the operation of the well and plant.

Each statement showed a profit except Nos. 15 and 16, which show a deficit. The Crystal Petroleum Company claims one-half of this deficit, or $905.47, from the estate of Frank Bostwick, one of the partners, doing business as Collins Oil Company.

Before the claim can be allowed, two questions would have to be decided in favor of the claimant. First, under the contract, was Collins Oil Company liable for one-half of this deficit? Second, if it be admitted that the Collins Oil Company was liable for one-half of this deficit, can it be recovered in this manner from the estate of one partner, leaving his administrator c. t. a. to require contribution from the other partners?

First, then, what did the parties intend by the agreement? It is explicit as to an equal division of profits, but no provision is made as to taking care of losses.

When each of two parties contributes something to a common enterprise, the profits of which they expect and agree to divide in proportion to their contributions, it is generally a fair inference that they expect to divide losses in the same proportions, unless a contrary intention be manifested. So, if the intention here was that the Collins Oil Company lease was to be its contribution to a joint enterprise, for which the claimant built a plant and paid for its operation as its equalizing share, a loss in operation should doubtless be borne equally.

But this agreement does not contemplate the conduct of a joint enterprise by the two companies. It is an outright bill of sale of the casing-head gas and an assignment of all the Collins Oil Company's rights thereto under the lease. And the consideration for the sale is the executory covenants of the claimant—later executed.

The Collins Oil Company said: "We have casing-head gas going to waste. If you will build a plant to extract gasoline from it, and pay us one-half of the net profits, you may have it. And, as a further inducement to your doing

this, you may have half the proceeds of the oil run, if you will pay for the pumping."

There is nothing to show any intention on the part of the Collins Oil Company to participate in the manufacture of the gasoline. They merely sold the gas for one-half of any possible profits that might be made. If no profits had ever accrued, the Collins Oil Company would have got nothing for their gas.

If the whole undertaking had resulted in loss instead of gain, it is difficult to see how, under the contract, contribution could have been compelled from the Collins Oil Company. The only possible ground on which the Crystal Petroleum Company could possibly sustain its claim would be on the ground that the entire transaction resulted in a profit, but that by reason of the final losses, occurring after prior distributions had been made, such prior distributions were rendered incorrect, and some of the profits, therefore, paid to Collins Oil Company should be returned as having been improperly received.

But the "Fourth" section of the contract negatives the intention to ascertain the net profits only at the conclusion of the business, since it expressly provides for monthly accountings. At first, these were had monthly, but later the intervals were lengthened until the periods became yearly. But the parties clearly intended that each settlement was final as of that particular date. The contract was a severable one in this regard, and the claimant cannot now go back to the good years and recover back profits then paid out on distribution.

If this does not seem fair to the claimant, the answer is that the business was wholly in their hands and they were not bound by the contract to continue to operate at a loss.

In so far, then, as this claim is based on expenses of operation, it should be refused. But there is one item resting on a different basis.

On statement No. 16 appears an item: "Apr. 5, Eureka Pipe Line Co. 62.51 bbls. oil on 3/29/22—204.59," and it is explained (without contradiction) that this was oil for which payment was made to Collins Oil Company and which was not accounted for. This should have been turned in, and Collins Oil Company is undoubtedly liable to this claimant for the full amount of $204.59, to be applied on the deficit arising from operating expenses. And this item forces us to a consideration of the second question noted above— that is, whether this $204.59 can be recovered from the estate of one of the partners?

Sections 3 and 4 of the Act of April 11, 1848, P. L. 536, provide as follows:

"Section 3. That where a judgment shall hereafter be obtained against two or more copartners, or joint or several obligors, promisors or contractors, the death of one or more of the defendants shall not discharge his or their estate or estates, real or personal, from the payment thereof; but the same shall be payable by his or their executors or administrators as if the judgment had been several against the deceased alone.

"Section 4. That in any suit or suits which may hereafter be brought against the executors or administrators of a deceased copartner for the debt of the firm, it shall not be necessary to aver in the record, or prove on the trial, that the surviving partner or partners is or are insolvent to enable the plaintiff to recover."

Of the effect of this act, it is said in Moores' Appeals, 34 Pa. 411, by Lowrie, C. J.: "The Act of April 11, 1848, § 4, by making the representatives of a deceased partner liable to suit for partnership debts, independently of the insolvency of the surviving partner, makes the estate of the former unconditionally liable for such debts. It was only because the remedies were

defective that it was before exempt. It follows, of course, that the creditors may demand payment on the distribution of the estate in the Orphans' Court; and they are not barred of this right, because of having obtained a judgment in the Common Pleas against the surviving partner, if they have not received satisfaction. If one partner, or his estate, thus pay more than his proportion, he must seek redress from the other in the ordinary form. True, this allows of cumulative remedies, but this is not uncommon; and the court has full power to arrest the execution of one of them when satisfaction has been obtained by the other."

In Blair, Admin'r, v. Wood, 108 Pa. 278, 283, Mr. Justice Mercur said: "Section 4 of the Act of April 11, 1848, provides for the bringing of a suit against the executor or administrator of a deceased copartner for a debt of the firm and for a recovery without averring in the record or proving on the trial the insolvency of the surviving partner. For the purpose of action against the representative, the debt is treated as if it was the individual debt of the decedent: Brewster's Admin'x v. Sterrett, 32 Pa. 115. The estate of the decedent becomes liable for the whole debt of the firm of which he was a member: Moores' Appeals, 34 Pa. 411. In the class of cases to which this act applies, its purpose is to make the indebtedness several which was joint before: Miller v. Reed, 27 Pa. 244. Being several, a debt against the estate of the decedent may be treated as such, either to maintain an action therefor or for the purpose of set-off. It follows there is no error in this record." See, also, Williams's Appeal, 122 Pa. 472, and Thorpp's Sons Co. v. People's Trust Co., Exec'r, 6 D. & C. 362.

This interpretation has been followed in numerous other cases, and unless changed by the Uniform Partnership Act of March 26, 1915, P. L. 18, any claim good against a partnership can be enforced against the estate of a deceased partner.

The Orphans' Court has jurisdiction of such a claim (Moore's Appeal, supra), and the rule of cases like Miller's Estate, 136 Pa. 349; Weigley v. Coffman, 144 Pa. 489, etc., which denies jurisdiction where the claim involves an accounting between partners, does not apply here.

Sections 13 and 14 of the Uniform Partnership Act of 1915 provide (13) for partnership liability arising from the wrongful act or omission of a partner, and (14) where there is a misapplication by a partner of the property of a third person in the hands of the partnership. Section 15 then provides as follows:

"Section 15. All partners are liable—

"(a) Jointly and severally, for everything chargeable to the partnership under sections 13 and 14.

"(b) Jointly, for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract."

The plain meaning of this section would seem to be that a partnership liability arising ex delicto or ex maleficio is joint and several, but that ordinary ex contractu obligations impose only a joint liability.

And its effect would then be to repeal the Act of 1848 above, in so far as it applies to this class of cases, and return to the common law rule of joint liability.

But the Uniform Partnership Act expressly saves from repeal sections 3, 4 and 5 of the Act of April 11, 1848, P. L. 536, and, in the absence of any manifest intention to limit the effect of that act as interpreted by the decided

cases, we must assume that section 15 of the Uniform Partnership Act of 1915 is to be qualified as to the class of cases to which the Act of 1848 applies.

We are, therefore of the opinion: (1) That the claim of the Crystal Petroleum Company is a valid claim against the Collins Oil Company to the amount of $204.59, with interest; (2) that under the Act of April 11, 1848, P. L. 536, a proceeding could be had against the estate of this decedent, one of the partners comprising the Collins Oil Company, in the first instance; and (3) that the Orphans' Court has jurisdiction to allow the claim.

A decree will be filed herewith in accordance with the foregoing.

From Harry D. Hamilton, Washington, Pa.