## Columbian Bank's Estate. Stevens' Appeal. McGrath's Appeal. Steward's Appeal.

[Marked to be reported.]

*Banks and banking—Capital stock as a trust fund.*

The capital stock of a bank is a trust fund for the payment of its debts, and the claim of its shareholders upon the fund are subordinate to the claims of its creditors. A purchase by an insolvent bank of its own stock is therefore invalid as to its creditors, and the seller's rights to the assets as against creditors is no greater than a shareholder's.

*Sale of its own stock to bank by director.*

A director of an insolvent bank, having become aware of the unsound condition of the bank, threatened to resign as director and sell his stock at public auction. The president of the bank induced him to refrain from selling the stock at auction, and an arrangement was made by which the director delivered the stock to the president and received for it interest-bearing obligations of the bank. No person was named as the purchaser of the stock. *Held*, that the vendor was affected with constructive notice of the fact that the bank was the purchaser of the stock and also with the fact that the bank was insolvent at the time of the sale.

In such a case the vendor cannot claim a dividend in the distribution of the bank's assets to the detriment of other creditors.

*Trusts and trustees—Investment in stock of insolvent bank.*

An executor with the knowledge and acquiescence of one of the other executors bought from himself with moneys of the estate the stock of a bank of which he was president. The third executor was life tenant of the estate, and had actual or constructive notice of the sale. Five days before the suspension of the bank, forty shares of the stock held by the trust estate were sold to the bank at par, and a certificate of deposit for the price was issued to the life tenant. *Held*, that the estate in the distribution of the assets of the bank had only the rights of a shareholder, and could claim no dividend as against creditors.

Argued April 1, 1891. Appeals, No. 133, 155 and 192, Jan. T., 1891, by John S. Stevens, John P. McGrath and Mary A. Steward from order of C. P. No. 2, Phila. Co., June T., 1887, No. 874, dismissing exceptions to report of auditor. Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

On Feb. 8, 1888, J. Warner Goheen was appointed auditor to distribute the assigned estate of the Columbian Bank. From the report of the auditor it appeared that John S. Stevens was director and vice president of the Columbian Bank. Becoming dissatisfied with the management of the bank and aware of

its unsound condition, on Sept. 10, 1886, he resigned from both offices. The auditor further reported:

" At the time he delivered his letter of resignation he informed the president that he would also sell out his stock. Mr. Stevens gave as his reason for desiring to sell that he did not wish to have so much money invested in an institution in which he did not oversee the management.

" Mr. Phillips, the president of the bank, urged him to do nothing rashly, as the fact of his selling his stock might possibly affect the credit of the bank, and told him that there were parties in New York who desired to invest $30,000 in the bank, and that he would see that his stock was disposed of to them.

" Sale of the stock was afterwards frequently urged by Mr. Stevens, and in the latter part of the year, possibly as early as November, he notified the president that he would put the stock up for sale at Thomas' auction.

" He was then informed that the party formerly referred to had $7,000 deposited at the bank and hoped soon to have the balance, and that the transaction would soon be completed.

" Mr. Stevens was subsequently confined to his house by sickness, during which time Mr. Steward, the cashier, called to see him, ' and asked if he would be willing to accept, in payment for his stock, certificates of deposit, payable monthly with three per cent interest. He told him he would, and he transferred the stock and received these certificates of deposit.'

" The transfer of the stock was made by Mr. Stevens by signing the power of attorney upon the back of certificate in blank, with neither the name of the transferee or date of transfer filled in, and delivering the same to John W. Steward, cashier of the bank.

" Mr. Stevens testified that he understood (but from what source nor upon what grounds does not appear, unless from the statement made some time prior thereto in reference to a New York party as a contemplated purchaser of the stock) that the purchaser was the New York party, and was either Mr. Ives or Mr. Stayner.

" There was nothing passed between Mr. Stevens and Mr. Steward, as respects the purchaser, except as contained in Steward's inquiry if he would accept certificates of deposit in payment for the stock. Steward's name was afterward inserted as the transferee.

"A certificate was on January 4, 1889, issued to John W. Steward for the one hundred shares transferred by Mr. Stevens, and with this certificate pinned to his own promissory note for $10,000, dated January 3, 1887, and payable one year after date, 'with interest at such rate as shall be equal to the dividend declared on Columbian Bank stock for the year 1887,' he discounted same at the bank, and $10,000, the full amount or the note, discount not being deducted as customary in advance, were passed to his credit.

"Steward then drew his check upon this account for the same sum of $10,000, in favor of the bank, in payment for ten certificates of deposit for $1,000 each, which were at the same time issued by the bank to Mr. Stevens, and payable respectively two, three, four, five, six, seven, eight, nine, ten and eleven months after date."

Mr. Stevens claimed payment of the certificates of deposit. His claim was objected to:

1. That the bank at the time of the sale of his stock was insolvent.

2. That the sale was not to Steward, the cashier, as an individual, but as a sale to the bank itself, a purchase which it was incompetent to make.

3. That Mr. Stevens, whether he had actual knowledge of these facts or not, was chargeable with full notice of them, and that for these reasons he cannot be allowed to part with his stock and come into competition with his own creditors in the distribution of the assets of the bank.

The auditor sustained the objections and disallowed the claim.

John P. McGrath who was also a director of the bank claimed payment of a certificate of deposit. The auditor reported upon this claim as follows:

"Mr. McGrath's claim is upon a certificate of deposit for $2,200, dated January 18, 1887, payable one year after date with interest at three per cent.

"This certificate was given on that date in exchange for twenty-two shares of stock of the bank sold on that day by Mr. McGrath to the bank.

"He was, at the time, one of the directors of the bank. He had advertised his stock at Thomas & Sons' auction sale. He

had prior thereto requested Mr. Bedford, the assistant cashier, to have Mr. Phillips, the president, relieve him of the stock.

"While it was advertised at Thomas', Mr. Phillips asked him (Mr. McGrath) if he would take a certificate of deposit, payable in one year, for it, Phillips stating that it would be a favor to him. Mr. McGrath 'didn't want to be too exacting,' and agreed to do so. The sale was directly to the bank, with nobody connected with the transaction but himself and the president. The market price for the stock at the time of the transfer was par.

"That Mr. McGrath did not actually know of the insolvency of the bank and did not sell for the purpose of evading his responsibility under the charter, is manifestly clear from the fact that at a subsequent date he became possessed (whether for money or in exchange can be of no moment) of ten shares of the same stock. Of course, his liability on ten shares would not be as great as on twenty-two, but if he had gone out once to escape liability he would not have come back again, if only for half that much.

"It also appears that the bank subsequently sold two of these shares for a valuable consideration to a third party, and that the other twenty shares were, by direction of the president, transferred without consideration to another person for the purpose of enabling him to act temporarily as vice president in the president's absence. When this purpose was subserved they were returned to the bank.

"The auditor is unable, however, to see that these matters afford Mr. McGrath any very material help. His case is governed by the same principles that control Mr. Stevens'."

Mary A. Steward, executrix, claimed $4,000, on a certificate of deposit.

The auditor reported on this claim as follows:

"John Steward, Jr., by his last will, dated September 13, 1878, and duly proved and registered at Philadelphia, in Will Book, No. 202, page 214, bequeathed and devised all his personalty and realty to his wife, Mary Ann Steward, for life, and directed his executors upon her death to sell the same and divide the proceeds equally among his eight children, and appointed his wife, John S. Stevens, and Charles Phillips, his executors, authorizing them, during his wife's life, to convert

his realty and personalty and invest the proceeds in other real property and good securities, when circumstances required it, provided that a majority of them, in case all were living, or both, if only two, or his wife alone, if she alone were living, should deem it for the best interests of his estate, the re-investments to be held and enjoyed by his wife for life as aforesaid. Letters testamentary were duly issued thereon to said executors.

" Charles Phillips had, about a month prior to January, 1882, organized the Columbian Loan Association and Savings Fund, an unincorporated joint association of persons holding shares therein for money subscribed under its articles signed by its respective members, and the association carried on a loan, banking and savings fund business.

"About March 1, 1883, there was outstanding $100,000 of capital of said association in shares of $10 each, of which Charles Phillips had in his own name a controlling part, and the association held the assets hereinafter mentioned.

" Charles Phillips, about that time, to acquire the charter of the Columbian Bank under which to continue business of the said association, for about $1,900 bought the outstanding shares of the capital stock of said bank, the par of which was $100 per share, and obtained the other shareholders of the association with himself to take one share of the bank stock, for each ten shares in the association, and the association transferred all its assets, subject to the payment of its liabilities, to the bank, which accepted the same March 1, 1883.

" Phillips was president of both the said association and bank, and in making said transfer the shareholders of the association transferred their shares therein to him, and shares of the capital stock of the said bank were issued to him in bulk for transfer by him to the parties interested. Seventeen shares of the capital stock of the said bank thus issued to him were, March 1, 1883, transferred by him to his own name as executor of said estate. Four hundred shares of said association were in the name of Chas. Phillips, executor of said estate, and, therefor, March 1, 1883, 40 other shares of the capital stock of said bank were issued to him as executor of said estate.

" Eighteen other shares of the capital stock of said bank were issued to Charles Phillips on account of 180 other shares

of the said association in his name, and October 13, 1883, were transferred by him to his own name as executor of said estate.

" January 29, 1884, Charles Phillips paid with the moneys of the said estate $1,000 to the said bank, and therefor had issued to him 10 shares of the capital stock, 5 of which shares were afterwards transferred by him to his own name as executor of said estate.

" July 21, 1887, he transferred 40 of the said shares of capital stock of the said bank in his name as executor of said estate to himself individually, and caused a certificate therefor to be issued by the said bank to himself individually, and July 22, 1887, gave his own note for $4,000, with that certificate, to the said bank, which then discounted the same and passed the proceeds thereof to his credit on its books, making his total credit then $4,196.12.

" July 23, 1887, he gave his check for $4,000 of that credit to the said bank in payment for a certificate of deposit of which the following is a copy :

THE COLUMBIAN BANK,

No. 433 Chestnut Street.

No. 4056.                    PHILADELPHIA, July 22, 1887.

THIS CERTIFIES that Mary A. Steward, Executrix, has deposited four thousand dollars in this bank, to the credit of Estate of John Steward, Jr., dec'd, payable to her order, one year after date with interest at five per cent. per annum, at Philadelphia Office of bank, upon surrender of this Certificate, which must be signed by the President and the Cashier.

$4,000.—Entered in C. D. B., Vol.          p.

Rec'g Teller.

Registered in C. D. B., Vol. II., p. 180.

S. Accountant.

Charles Phillips,

President.

John W. Steward,

Cashier.

which he then gave with other securities and papers of the said estate to N. Harper Steward for Mary Ann Steward.

" No money was at this time deposited by Phillips or any one else in payment for this certificate. His said note and certificate for 40 shares of capital stock are in the possession

of the assignees of the said bank, which failed July 29, 1887; and the note was inventoried and appraised among the "Bills Receivable Bad."

"Charles Phillips, one of the said executors, received of the moneys belonging to said estate, in December, 1881, about $28,000, in settlement of the decedent's interest in the partnership of Steward & Stevens, and in January, 1882, over $4,000 from the sale of the decedent's realty, and at other times other moneys.

"Charles Phillips, previous to his organization of the Columbian Bank, (about March 1, 1883,) paid into said association all the moneys of said estate in his hands with moneys of other trusts and his own moneys. The moneys of this association were deposited daily with the Farmers' and Mechanics' Bank; Drexel & Co., and the Fidelity Trust Company of Philadelphia.

"Mr. Phillips had three deposit accounts with the Loan Association and with the bank; one in his individual name, in which at the suspension of the bank there was a balance of $196.12; one in his own name as "trustee," in which there was a balance of $94.99; and one as executor of estate of Sallie Miller, in which there was a balance of $81.29.

"John S. Stevens, one of the said executors, never took any part in the control or management of the estate of John Steward, Jr., or received any of its assets, and was discharged by the orphans' court of Philadelphia county, by decree of October term, 1887, No. 203, from said executorship on that ground, the widow and beneficiaries, Mary A. Steward, Helen Patterson, Charles Steward, N. Harper Steward, Virginia D. Steward, John W. Steward, and Florence Steward, having signed an agreement to that effect prepared in August, 1887, which was annexed to the petition of discharge. John S. Stevens was never consulted or informed by Charles Phillips about his said investments of the funds of the estate, and although John S. Stevens learned, from seeing the books of the Columbian Bank some time (Mr. Stevens could not say that it was not within 6 mos.) after its operation began, that some of its stock stood in the name of the estate, he did nothing, supposing Mary A. Steward knew of it.

"Mary A. Steward was never informed by Charles Phillips

and did not know that moneys of the estate had been invested by him in stock of that bank, and about January, 1887, having requested her son, N. Harper Steward, to look after her affairs, he requested a statement of the affairs of the estate from Charles Phillips, and assisted him to make it up and told him to take the moneys of the estate invested in the stock out and pay off the mortgages against the property of the estate. N. Harper Steward, from a severe surgical operation, for several months was unable to attend to business, but upon getting out, finding that had not been done, again asked it to be done, and the result was that Charles Phillips caused the said certificate of deposit to be issued to the said estate as aforesaid.

"N. Harper Steward was one of the children of John Steward, Jr., and interested in the estate in remainder after his mother's death. He was the manager of the Germantown branch; also a director of the bank, and had knowledge of the investment in the shares from the organization of the Loan Association.

"It thus appears that the claim is founded substantially upon these facts: that Charles Phillips, one of the executors of the estate of John Steward, Jr., deceased, invested the funds of the estate in the shares of the Columbian Loan Association and subsequently, by transfer of these shares, in the stock of the Columbian Bank.

"That he did this without the knowledge of either of his coexecutors; that one of them (although not an acting executor) subsequently and within about six months from the organization of the bank acquired that knowledge and did not dissent therefrom. That a conversion of the securities or property of the estate could by the terms of the will only be lawfully made by the executors, upon the assent of two of them.

"That Mr. Phillips likewise put into the Loan Association, in some shape, all moneys received by him as executor of John Steward, Jr.'s, estate, amounting to many thousands of dollars, together with moneys of other trusts and of his own.

"That these moneys, with other funds of said association, were deposited by the Loan Association to its credit with the Farmers' and Mechanics' Bank, Drexel & Co., and the Fidelity Trust Company of Philadelphia.

"The Columbian Loan Association was an unincorporated

banking association, receiving deposits from other sources and conducting a general banking business.

" That the stock held by Mr. Phillips as executor was, eight days prior to the suspension of the bank, transferred to himself individually in form, but in reality to the bank, a conclusion which is even clearer by reason of its proximity to the date of suspension than in Mr. Stevens' claim. And the certificate of deposit claimed on was issued for the par value of the stock in manner as related in the statement of facts. The insolvency of the bank and worthlessness of the Phillips' note are of course conceded.

" It is urged on behalf of the executrix that the investment of Charles Phillips, as executor of the estate of John W. Steward, deceased, in the shares of the bank, was a misappropriation, and an unauthorized investment of the moneys of the estate ; that he but performed his duty to his trust in causing the certificate claimed on to be thus issued to his coexecutrix."

John S. Stevens filed the following exceptions to the auditor's report :

1. The auditor erred in finding that the Columbian Bank was insolvent at the time of the sale by John S. Stevens of his stock.

2. The auditor erred in reporting that there was a legal presumption from the facts reported by him that the Columbian Bank was insolvent at the time of the sale by John S. Stevens of his stock.

3. The auditor erred in not reporting that at the time of the sale by John S. Stevens of his stock the bank was in good credit and the stock selling for par in the market.

4. The auditor erred in reporting that the loan by the bank to Steward, upon the pledge of the stock purchased from Stevens, was in fact a purchase by the bank, there being no evidence either that Steward was not responsible or that there was any agreement or understanding different from that shown by the books.

5. The auditor erred in reporting that the sale made by John S. Stevens of his stock, after he had ceased to be a director and six months before the failure of the bank, was invalid as to its creditors.

6. The auditor erred in reporting that upon the facts reported by him Mr. Steward and Mr. Phillips were the agents of John S. Stevens in the sale of the stock.

7. The auditor erred in reporting that John S. Stevens, in making a sale after he had ceased to be a director, was chargeable as a stockholder with notice of the transactions and condition of the bank.

8. The auditor erred in rejecting the claim of John S. Stevens as a creditor upon the certificates of deposit held by him.

John P. McGrath filed, inter alia, the following exceptions:

1. The auditor erred in refusing to allow the claim of the exceptant upon his certificate of deposit for $2,200 for the full amount of the said certificate.

Mary A. Steward, executrix, filed the following exceptions:

1. Because the auditor therein disallowed the claim of Mary A. Steward, executrix aforesaid, upon the certificate of deposit of said bank in her favor, dated July 22, 1887, for $4,000, payable one year after date, with interest at five per cent per annum, for the amount of the dividend upon said claim, with interest at five per cent per annum until maturity, and thereafter at six per cent per annum out of the fund for distribution.

2. Because the auditor therein disallowed the claim of Mary A. Steward, executrix aforesaid, to an equal dividend out of said fund with the other creditors of said bank upon the moneys of the estate of John Steward, Jr., deceased, to the amount of $4,000, improperly converted by her coexecutor, Charles Phillips, into the assets constituting the fund for distribution.

3. Because the auditor therein found, decided and reported that the equity of the other creditors of the said bank was a higher claim upon the fund for distribution than the legal and equitable claims aforesaid of Mary A. Steward, executrix aforesaid, and therefore excluded her claims from an equal share in the distribution of said fund with the other creditors of the said bank.

4. Because the auditor erred in not awarding to Mary A. Steward, executrix, aforesaid, a pro rata dividend with the other creditors out of the fund for distribution.

All of the exceptions were dismissed by the court. The several exceptants appealed.

*Errors assigned* in each appeal were dismissal of exceptions, quoting them, as above.

*John G. Johnson, Frank P. Prichard* with him, for John S. Stevens.—The fact of insolvency of the bank at the time of the sale of Mr. Stevens' stock was not established. In the United States the purchase by a corporation of its own stock is not invalid per se. The rule is that such a purchase is, in the absence of legislative enactment, within the power of a corporation unless the corporation is insolvent, in which case the purchase is bad, not because it is ultra vires, but because it is fraudulent as to creditors : Boone on Corporations, 107 ; Taylor on Corporations, §§ 134 and 135 ; First National Bank of Salem v. Salem Flour Mills Co., 39 Fed. Rep. 89 ; Coleman v. Columbia Oil Co., 51 Pa. 74 ; Coppin v. Greenles, 38 Ohio, 275 ; Morgan v. Lewis, 46 Ohio, 1.

Steward was the real purchaser of the stock, which he bought with money borrowed from the bank upon pledge of the stock as collateral.

Mr. Stevens was not, at the date of the sale of the stock, chargeable with constructive notice of the financial condition of the bank, and of the transactions between the bank and Steward : Johnston v. Laflin, 103 U. S. 800 ; Whitney v. Butler, 118 U. S. 655.

*Theodore F. Jenkins,* for John P. McGrath.—As to the two shares reissued by the bank for cash, Mr. McGrath is certainly entitled to compensation. The purchaser stood in Mr. McGrath's place, and all liability of the former owner of the stock ceased on its reissue : Webster v. Upton, 91 U. S. 65 ; Canal Co. v. Innes, 3 Wharton, 198 ; Bell's Ap., 115 Pa. 88 ; Bank v. Gillespie, 115 Pa. 564 ; Crandall v. Lincoln, 52 Conn. 73.

A corporation has the right to purchase its own stock : Bank of Columbus v. Bruce et al., 17 N. Y. 507–512 ; State v. Smith, 48 Verm. 266–285 ; Williams v. Manufacturing Co., 3 Md. Ch. 418 ; R. R. Co. v. Marseilles, 84 Ill. 145–149 ; Bank v. Flour Mills Co., 39 Fed. Rep. 89 ; Taylor v. Miami Ex. Co., 6 Ohio, 176 ; Robison v. Beall, 26 Ga. 17 ; U. S. Trust Co. v. Harris, 2 Bos. (N. Y.) 75.

The bank was not insolvent at the time of the sale. Angell and Ames Corporations, sec. 151.

Mr. McGrath was not charged with a knowledge of the insolvency from the fact that he was a director. Spering's Ap., 71 Pa. 11.

*Geo. L. Crawford, George M. Dallis* with him, for Mary A. Steward.

Steward's estate had a right to follow the assets of the bank, in all the changes of investments of those moneys, mingled with its own, with a charge thereon for the amount of these moneys, irrespective of identifying, by ear marking, the moneys in their transformations: Hallett's Est., 13 Ch. Div., L. R. 696 (see pages 708, 9, 10, 11, 13, 14, 17, 18, 19, 22, 23, 29, 30, 33); Lord Provost, etc., of Edinburgh v. Lord Advocate, 4 App. Cas., L. R. 823, 841; Hancock v. Smith, 41 Ch. Div., L. R. 456; Bank v. King, 57 P. S. R. 202.

The auditor rejected this claim upon the ground that the equity of Steward's estate to a return of its moneys from the assets of the bank was detached by the superior equity of the creditors of the bank, under the general voluntary assignment for their benefit, because they were bona fide purchasers for value, without notice in that the capital stock of a corporation is a trust fund for its creditors.

This principle cannot be predicated of capital stock which the president of the corporation issued for trust moneys, which he violates another trust in investing therein and placing those trust moneys in the assets of the corporation.

Besides, even if this were the case of contending equities between the creditors under the assignment and Steward's estate, the latter has fortified its equitable claim by a legal obligation, and between equal equities the law prevails. Bispham's Eq., section 40; Adams' Eq., section 160.

*F. Carroll Brewster, G. Harry Davis* with him, for appellees.

STEVENS' APPEAL.

OPINION BY MR. JUSTICE McCOLLUM, February 22, 1892.

The appellant sold his stock in the Columbian Bank on Jan. 4, 1887, and the learned auditor finds that the bank was the purchaser of it and then insolvent. In these findings he is well sustained by the evidence. The Columbian Bank began business about March 1, 1883, as the successor of a partnership

engaged in banking under the name of the Columbian Loan
Association and Savings Fund, of which Charles Phillips was
president, and the actual capital of the bank was then limited
to the assets, subject to the liabilities of the firm to which it
succeeded. In order to make the assets balance the liabilities
it was necessary to include in the former the "good-will" of
the loan association at $28,000, and the "good-will" of Charles
Phillips at $10,000. When it is considered that the deposits
with the association were less than $25,000, the estimate of the
value of the good-will, included as assets, seems exorbitant.
The appellant was a director and vice president of the bank
from the time it commenced business until Dec. 31, 1886, and
Phillips was the president of it until its suspension in July,
1887. When the suspension came, the liabilities, exclusive of
capital stock, were $300,000, and the assets were about one
third of that sum. Of the latter the learned auditor says:
"The assets were found to consist, in addition to the ordinary
bank assets, of a multitudinous variety of merchandise, the in-
ventory exhibiting upwards of fifty folio pages descriptive of
these articles. The cash resources were practically exhausted,
only $1,285.93 remaining in hand. The bills receivable and
other loans, appraised as good, were only partially available for
the benefit of the creditors in general, as in many instances
they were set off in whole or in part by the deposit accounts of
the debtors." A short time before the appellant sold his stock,
he scrutinized the condition and management of the bank, and
made discoveries concerning them which "startled" him. His
resignation as vice president and director was the result of this
scrutiny. He determined to dispose of his stock, and threat-
ened to sell it at auction, but was induced by Phillips to refrain
from a public sale of it in order to save the credit of the bank.
From these facts, which are undisputed, the learned auditor
drew the inference, and we think properly, that the bank was
insolvent when it made the purchase. There is no evidence
that the bank sustained any losses, that there was any depre-
ciation in the value of its assets, or that its indebtedness was
materially increased between the sale and the suspension. In
the absence of any showing, indicative of a change in the con-
dition of the bank after its purchase of the stock, and in the

presence of the facts already mentioned, the only conclusion admissible is that reached by the auditor.

The appellant was a director and vice president of the bank when he threatened to sell his stock at auction, and advised with Phillips in relation to the sale of it, and it is clear from the testimony that the latter was anxious that the former's dissatisfaction with the condition and management of the bank, and his purpose to sever his connection with it, should not be generally known. It is worthy of note that, in the interviews between them concerning the sale of the stock, no person was named as the probable purchaser of it, that the appellant made no inquiries on this point, and that the only parties known to him in the transaction were the president of the bank and its cashier, to whom he delivered the stock, and who gave him, in exchange therefor, interest-bearing obligations of the bank payable to his order. These facts, considered by themselves, are persuasive evidence that the stock was sold to the bank, and the subsequent formal transfer of it to the cashier for his worthless note is confirmatory of this view, because it was manifestly a device to hide the real nature of the transaction. The appellant is chargeable with knowledge of the insolvency of the bank and of its purchase of his stock. The sale was the result of his investigation of its affairs, and was completed four days after its acceptance of his resignation as director and vice president. As a director it was his duty to participate intelligently in its management, and he must be considered as possessed of the information respecting its condition which the discharge of that duty would have given him. In such case the duty to know is, in its legal effects, the same as actual knowledge. The circumstances connected with the sale of his stock were sufficient to put him on inquiry as to the purchaser, and it is reasonable that he should be held to have the knowledge to which such inquiry would have led him.

But, aside from these circumstances and the duty they imposed, his agent to sell the stock was the president of the bank which purchased it, and the law imputes to the principal the knowledge acquired by the agent in the course of his employment. In Johnson v. Laflin, 103 U. S. 800, a case cited by the appellant, Mr. Justice FIELD said: "The general doctrine that the principal in a transaction is chargeable with notice of mat-

ters affecting its validity coming to the knowledge of his agent pending the proceeding, is not questioned. Had Geralt, the bookkeeper, been appointed by Laflin to make the sale, and had he, in negotiating it, learned the facts as to the purchase and use of the funds of the bank, there would be ground to invoke the application of the doctrine." The present case, on the point under consideration, falls clearly within this principle.

We have, then, the case of a stockholder in an insolvent bank who, with knowledge of its insolvency, sold his stock to it, and, in the distribution of its assets, claims a dividend on the price or sum the bank agreed to pay him for it. It is obvious that an allowance of this claim will injure the creditors of the bank by reducing the dividends they would otherwise receive from its assets, and proportionately increase their losses. It is well settled in England that a purchase by a corporation of its own stock is ultra vires, unless the power to purchase it is clearly conferred by its charter. In our country the decisions on this point are conflicting, but they are practically unanimous in holding that an insolvent corporation cannot buy its own shares to the detriment of its creditors. As its capital stock is a trust fund for the payment of its debts, the use of this fund in the purchase of shares, in itself, is destructive of a security intended primarily for the creditors, and a plain misappropriation of it. If the corporation was permitted to so use the trust fund, it might in this way distribute its capital among its shareholders, extinguish their personal liability and leave its creditors without security or remedy. We cannot concede that it has a power which would make such results practicable. The certificates of deposit on which the appellant bases his claim to a dividend, were received by him from the bank in part payment for the stock which he sold to it, and they gave him no better standing to participate in the distribution of its assets than he had as a shareholder. It follows that the learned auditor was right in rejecting his claim.

Decree affirmed, and appeal dismissed at the cost of the appellant.

## MCGRATH'S APPEAL.

Opinion by Mr. Justice McCollum, February 22, 1892.

The appellant owned stock in, and was a director of, the

Columbian Bank. On Jan. 18, 1887, he sold his stock to the bank, which was then insolvent. He was, as a director, chargeable with knowledge of its insolvency. He received the bank's certificate of deposit in payment of the price for which he sold the stock. On this certificate he claims a dividend from its assets. The learned auditor disallowed his claim. This ruling is sustained by Stevens' Ap. [the preceding case], decided at this term. We need not repeat what was there said.

Decree affirmed, and appeal dismissed at the cost of the appellant.

## STEWARD'S APPEAL.

OPINION BY MR. JUSTICE McCOLLUM, February 22, 1892.

Charles Phillips was one of the executors of the estate of John Steward, Jr.; he was also the president of the Columbian Association and Savings Fund, and of its successor in business, the Columbian Bank. His coexecutors in the management of the estate were Mary A. Steward, the appellant, and John Stevens. The will under which they acted authorized them to dispose of real and personal property belonging to the estate, and to make such investments of the proceeds as any two of their number approved. Prior to March 1, 1883, the moneys of the estate received by Phillips were deposited by him with the loan association. He had three deposit accounts with it, one in his individual name, one in his own name as "trustee," and one as executor of the estate of Annie Miller. These accounts were transferred to, and continued with, the Columbian Bank after it succeeded to the business, assets and liabilities of the loan association. The bank made an assignment for the benefit of its creditors, on July 27, 1887, and the aggregate amount of the balance to his credit in these accounts was, at that time, $372.40, of which sum $94.99 belonged to the account as "trustee." If all the trust moneys he deposited, exclusive of the moneys of the Miller estate, entered into the "trustee" account, it included the moneys of the Steward estate and of other trusts managed by him during the period covered by it. It is impossible to ascertain, from this account, the dates and amounts of the Steward deposits, as distinguished from deposits of other trust moneys, and these

were not shown by evidence aliunde. The accounts, therefore, fail to disclose any indebtedness by the bank to the Steward estate. They show that the moneys deposited by Phillips with the loan association and with the bank, whether in his own name as "trustee," or as executor, were substantially exhausted before the assignment. It appears that on March 1, 1883, four hundred shares of the capital stock of the loan association, of the par value of $10 each, were in the name of Charles Phillips, as executor of the Steward estate, and that, on the organization of the Columbian Bank, forty of its shares, of the par value of $100 each, were substituted for them; that soon thereafter Phillips tranferred forty of its shares, which he held individually, to his own name as executor of said estate, so that, early in the year 1884, the estate appeared on the books of the bank as the owner of eighty shares of its capital stock. The holding of this stock by the estate was known to, and acquiesced in by Stevens, who was one of the executors, and a director of the bank, and it was also within the knowledge of N. Harper Steward, a son of the testator, and interested in the estate in remainder after the death of his mother. The learned auditor has found that the appellant was not informed of this investment; but it seems almost incredible that she was ignorant of it, when it is remembered that at least one half of the stock was held by the estate five years; that she was entitled to the use of the entire estate during her life, and that she was joined with Phillips and Stevens in the administration of it. But we need not pursue this subject further. We accept the facts as found by the auditor, and decide the case upon them. Five days before the suspension forty shares of the stock, held as above stated, were sold to the bank at par, and a certificate of deposit for the price was issued by the bank to Mary A. Steward, executrix of the estate of John Steward, Jr. The appellant's claim upon the assets of the bank is founded on this certificate.

In Stevens' Appeal, supra, we held that a purchase by an insolvent bank of its own stock was invalid as to its creditors, and that the seller's right to the assets as against them was no greater than a shareholder's. This ruling was based on the familiar principle that the capital stock of a bank is a trust fund for the payment of its debts, and that the claim

of its shareholders upon the fund are subordinate to the claims of its creditors. It is contended, however, that the claim of the appellant does not fall within this principle, because of an alleged violation by Phillips of his trust in using the moneys of the Steward estate in the purchase of the stock he held as executor. It should be stated, in this connection, that it nowhere appears that more than five shares of the stock which was issued to Phillips individually, and was afterwards transferred by him to the Steward estate, was purchased with the moneys of the estate, nor does it appear whether the stock which was sold to the bank in July, 1887, was that which was substituted for the estate's shares in the loan association, or that which was transferred to it by Phillips. Certainly, if Phillips was the owner of the stock which was issued to him individually, his transfer of it to the Steward estate did not in any degree change its character or impair its value as a security for the creditors of the bank.

If it be conceded that the stock sold to the bank, and for which the certificate of deposit was issued, was purchased by Phillips with the moneys of the estate, and that the investment was unauthorized, it does not follow that the estate can recover as against these creditors, the price the bank agreed to pay for the stock or the moneys expended by Phillips in its purchase. The moneys deposited by Phillips in his own name, as " trustee " or as executor, were paid out on his checks and such payments discharged the obligation created by the deposits. If the moneys so paid were invested in the purchase of the stock of the bank, its liability thereafter was to the owner of the stock, not as a creditor, but as a shareholder. The sale of the stock to the bank was really made at the instance of the appellant, who, by her agent, N. Harper Steward, directed Phillips " to take the moneys of the estate invested in the stock out and pay off the mortgages against the property of the estate." Her possession of the certificate of deposit, which is the basis of her present claim, is a result of the direction so given, and it was prompted by her agent's investigation of the affairs of the bank, six months before the sale. For three years before the assignment by the bank, its books showed that eighty shares of its capital stock were in the name of Charles Phillips, as executor of the John Steward estate. John Stevens, a coexec-

utor of Phillips in the management of said estate, knew this and did not object to it. His knowledge and acquiescence may fairly be taken as an approval by him of the investment. We think it is clear, on the facts shown, that, in the distribution of the assets of the bank, and as against its creditors, the estate must be regarded as having only the rights of a shareholder. Bank v. King, 57 Pa. 202, and Hallett's Estate, 13 Ch. Div. L. R. 696, are not applicable to the case under consideration. In the case first named, an agent deposited in a bank in his own name the moneys of his principal; a creditor of the agent attached the deposit, and it was held that the attachment could not prevail against the beneficial owners of the fund. In Hallet's estate a trustee blended trust moneys with his own in an account at his bankers in his individual name, and afterward drew out a portion of the moneys so deposited. It was held that it must be taken that he drew out his own money first, and that the beneficial owners of the moneys remaining on deposit should receive them. In both cases the obligation of the depositaries was conceded. In the case before us, the Columbian Bank is not a debtor of the Steward estate, or of its unfaithful trustee. The liability of the bank is to the owner of its stock as a shareholder, who cannot take any portion of its assets until its creditors are satisfied.

We need add nothing to what the learned auditor has said concerning the identification of the trust moneys. On this branch of the case his views are in line with the doctrine of Thompson's Ap., 22 Pa. 16, and kindred cases.

Decree affirmed, and appeal dismissed at the cost of the appellant.