# Georgiana J. Hotchkiss, trading as Hotchkiss & Co. *v.* John Roehm, Appellant.

*Promissory notes—Findings of fact by referee—Review.*

A referee's findings on sufficient evidence, even when contradicted, that an indorsee of a promissory note had no knowledge of a failure of consideration between the original parties, when confirmed by the court below, will not be reversed except for clear error.

*Promissory notes—Contract—Rescission—Principal and agent.*

Where a person gives his promissory notes to an agent for the purpose of raising money on them, and the agent sells the notes partly for cash and partly for other notes, which the principal accepts, the principal cannot, after the first one of the notes which he received matures and is protested, rescind the sale on the ground that he did not authorize his agent to take notes.

*Promissory notes—Set-off.*

In an action upon promissory notes, other notes indorsed by the plaintiffs and held by defendant, which did not mature until after the suit was brought, cannot be set off against the notes in suit.

Argued March 30, 1897.   Appeal, No. 68, Jan. T., 1897, by defendant, from order of C. P. No. 4, Phila. Co., June T., 1892, No. 843, dismissing exceptions to referee's report.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Assumpsit on promissory notes.

The case was referred to Leoni Melick, Esq., as referee, who reported as follows:

It appears from the evidence of the defendant, who is a brewer residing in the city of Philadelphia, that on or about May 12, 1892, the date of the notes in suit, which are at three months, they, with two others of same date and amount, were delivered by the defendant to one C. Alfred Spooner for the purpose of having said notes discounted and the proceeds delivered to the defendant.   The defendant further says that Spooner was a note broker, having an office in the Girard Building, in Philadelphia, and had represented that he could have the notes discounted through Hotchkiss & Cokefair, in New York.

It is conceded that the four notes of the defendant were sold

in New York city by Spooner, who received therefor $1,500 in cash, or by check, and promissory notes of the face value of $10,500. The plaintiff claims that Spooner sold the said four notes, for the consideration named to one Charles C. Cokefair, who, in turn, sold two of them (the notes in this suit) to the plaintiff, who paid for them by check. The other two of the said four notes subsequently came into the possession of one J. Hull Browning, and were paid in full after suit and verdict. The defendant claims .that the four notes were sold by Spooner directly to the plaintiff for the consideration received by Spooner; that Cokefair was a mere go-between, and that the plaintiff and Cokefair were parties to a scheme which had for its object that they should obtain defendant's. notes and give for them but $1,500 cash and the balance in worthless paper.

The following is a list of the notes received by Spooner and delivered to the defendant:

Note dated May 26, 1892, at four months, made by J. H. Swift to the order of C. C. Cokefair and by him indorsed, $1,500.

Note dated May 26, 1892, at four months, made by James S. Kendall to the order of C. C. Cokefair and by him indorsed, $1,500.

Note dated May 26, 1892, at four months, made by C. C. Cokefair to his own order and by him indorsed, $1,000.

Note dated May 26, 1892, at sixty days, made by C. C. Cokefair to his own order and by him indorsed, $1,750.

Note dated May 26, 1892, at thirty days, made by C. C. Cokefair to his own order and by him indorsed, $750.

Note dated May 26, 1892, at three months, made by C. C. Cokefair to his own order and by him indorsed, $500.

Note dated April 15, 1892, at five months, made by C. C. Cokefair, J. H. Swift and James S. Kendall to the order of Hotchkiss & Co. and indorsed Hotchkiss & Co., for $2,500.

Note dated April 15, 1892, at six months, made by Hotchkiss & Co. to their order, indorsed by them and by C. C. Cokefair, $1,000.

It is conceded that the sale of the notes by Spooner took place on or about May 26, 1892, and not earlier than that date. It does not appear in the evidence when Spooner turned over to the defendant the $1,000 of the $1,500 which he had received

and the notes for $10,500, but it would seem that the defendant did not at once repudiate the transaction and demand back his notes. In the defendant's letter to the plaintiff, dated August 10, 1892, he says: "I now want the four notes of $3,000 each, and am in position to return all the paper which was given and the $1,500 in cash, as Mr. Spooner now states that was the amount of cash he received, although I was led to believe at the time that it was only $1,000 in cash. It was not understood by me that I was to receive any paper, but it was merely taken temporarily, it being all to be turned into cash," etc. As late as June 24, 1892, about one month after the sale of the note in suit by Spooner, Spooner wrote to Cokefair: "I have yet remaining two notes of Roehm's, of $1,000 and $1,500," and proposed to exchange them for other notes and cash, and he further intimated that he expected to sell two of the notes which he had received for the Roehm notes; "The smaller notes of $1,000 and $1,500 of Swift & Hotchkiss." It does not seem to the referee that the defendant's case is assisted by the evidence of Spooner, who was called for the purpose of showing that the sale by him was made directly to the plaintiff. It appears from the evidence that the plaintiff was doing business as a banker at 31 and 33 Broadway, New York, under the name of Hotchkiss & Company, and that Philo P. Hotchkiss was the manager of this business, that Spooner had desk-room, from "January till August," in the office of Hotchkiss & Company, and that Spooner had a notice upon the heading of his letters in the following words: "With Hotchkiss & Company, Bankers, 31 and 33 Broadway, New York." These facts, it is claimed, show such an intimacy between Spooner and Hotchkiss as to indicate the probability of a sale directly to the plaintiff. Of all the letters by Spooner submitted to the referee, but two show the said notice, one dated May 24, 1892, and one dated June 28, 1892. Hotchkiss, the manager for plaintiff, testified that Spooner had no authority to use the name of Hotchkiss & Company, that as soon as he heard that Spooner was using that name he requested him to stop it, which he did. This testimony of Philo P. Hotchkiss was given January 11, 1892, and when Spooner subsequently (June 12, 1894) testified, he did not deny this, but on the contrary testified that his only connection with Hotchkiss was that he "rented desk-room from him." Neither did Spooner contradict Hotchkiss's allegation

that he (Spooner) practically did not occupy the said desk-room, and that Hotchkiss seldom saw him. An examination of the evidence of Spooner leads the referee to the conclusion that but little, if any, weight should be given to it. He starts out by saying that of the four notes received from the defendant he (Spooner) was to have the use of two, and further explains that in consideration of his getting for Roehm $1,000 in cash, he (Spooner) was to have the proceeds of two notes for $3,000 each for his own use, to do with as he pleased, and without liability to account for it to the defendant. If this story be true the defendant is not entitled to much consideration, and if it be false the same may be said of the defendant's witness, Spooner. Spooner testified that the direct transfer was made to Cokefair; that he made the sale to Cokefair; that he understood that the notes were for Hotchkiss, again that he understood that the notes were for Hotchkiss from what was said between Hotchkiss and himself. " Q. Mr. Hotchkiss knew of the delivery of the paper? A. Undoubtedly to my belief."

The witness finally does say that he believes that the deal which was carried out was entered into between Hotchkiss and himself. He is contradicted by both Cokefair and Hotchkiss, and his letters to Cokefair dated May 28 (within a day or two of the transaction), June 24 and 28, make no mention of Hotchkiss as being a party to this sale, and clearly indicate a sale to Cokefair, and that Spooner thought that, on June 28, 1892, Cokefair still had possession of at least three of the Roehm notes. Spooner states in his evidence at least four times, that part of the agreement he made with Hotchkiss was that Cokefair's note for $500 was to be discounted by Hotchkiss an l placed to the credit of Spooner. He is contradicted in this by his own letter written May 28, 1892 (within a day or two of the transaction), in which he says that the discount of the $500 note was no part of the contract of sale, but that he had his (Cokefair's) assurance that he would do all he could to effect the said discount. He makes no mention in the letter of Hotchkiss as having anything to do with the sale, or as having promised the discount. The witness Spooner is not supported by any of his letters offered in evidence by the defendant. His letter of May 10, 1892, before he received the note in suit, and when he had apparently another note for $10,000 (see receipt dated May 4, 1892) made by the defendant is addressed to

Cokefair.   No mention is made of Hotchkiss, but he offers to sell to Cokefair.   It is to be noticed that the offer itself is not to sell for cash, but "75 cents cash and 25 cents in some good paper."   He also states in the letter that defendant will only accept certified check and paper unquestionably good.   He suggests Swift paper (Swift's name is on the notes which he received to the extent of $4,000), and adds, "There is no question but what he will pay his paper, and I cannot afford to see him take anything about which there will be any doubt."   In his evidence he states that he undoubtedly felt that all the paper which he took was good at the time he took it.

C. A. Wendell, Esq., an attorney, testified that on May 17, he called on defendant on behalf of the plaintiff, and stated to him that the notes had been offered the plaintiff for sale.   That he (Wendell) had one of the notes in suit with him at the time, and desired to know of the defendant whether they were genuine and would be paid; that he was assured by the defendant on both points, and that the defendant said that he was obliged to help his customers pay the increased liquor license, and that for that purpose it was necessary that he should put out his paper.   The defendant denies having had any such interview with Wendell, or at least claims not to remember it.   It does not appear from this interview, if it occurred as stated, that Wendell said that the plaintiff proposed to purchase the notes from the defendant.   It is just as consistent with this alleged interview that plaintiff contemplated the purchase of the notes from some one who had already bought them from the defendant, indeed the certificate of even date with the notes and attached to each would lead one to suppose that they had already been sold by the defendant.   The following is a copy:

"MAY 12th, 1892.

"This is to certify that a certain promissory note made and signed by John Roehm, dated May 12th, 1892, for $3,000, and payable three months after date to the order of myself, indorsed by John Roehm, is a genuine business note given for value received, and there is no defense to the same either in law or in equity.

"(Signed)     JOHN ROEHM.

"Witness,

"JOSEPH NEVINS."

But it is argued by counsel for defendant that the evidence of Wendell, a witness for the plaintiff, shows that inasmuch as the plaintiff's attorney had one of the notes in his possession on the 17th, and Cokefair did not claim to have bought them till the 26th, that it necessarily follows that the plaintiff must have received the notes from Spooner. It does not appear to the referee that this is a necessary consequence. If on May 17 (prior to any purchase by Spooner), Spooner could have delivered the notes to Hotchkiss for the purpose of investigations as to their genuineness, it is equally true that Spooner could have delivered the notes to Cokefair for the same purpose, and Cokefair intending to purchase on condition that he could sell the notes to the plaintiff could have delivered the notes to Hotchkiss. In view of the fact that the defendant denies this interview, and if it occurred made no explanation of the certificate attached to the notes, failed to say in effect, " it is true that the notes appear to have been sold by me but as a fact they have not been, but are only held by Spooner for sale," it appears to the referee that the weight on this point is with the plaintiff.

It is argued by counsel for defendant that there was no reason for plaintiff to discount a single-name paper of a Philadelphian in New York, when he at once had them discounted in the Columbian Bank. That the transaction was unbusinesslike and the story improbable. Cokefair explains why the plaintiff purchased the notes in suit, and says that the plaintiff was induced to purchase the notes on his (Cokefair's) promise to have discounted in the Columbian Bank for the benefit of the plaintiff a batch of notes including one of those in suit, in an amount exceeding $22,000, and he offered in evidence a letter from the Columbian Bank, showing the transaction. The letter was excluded as not being legal evidence, but the offer to read the same is an answer to the argument. It also appears to the referee that if at that time Hotchkiss knew the banking concern he was in charge of to be insolvent, and if he was the swindler claimed, he failed to take advantage of the greatest opportunity afforded by the transaction when he took up the note or notes which he had had discounted in the Columbian Bank. The plaintiff has the notes now and must have taken them up if they were discounted.

Philo P. Hotchkiss, the manager for the plaintiff, testified in reply to the question:

" Q. What did you give for these notes ?   A. I gave for the one maturing first $2,959.50, and for the second $2,972.50."

This is manifestly inaccurate.   The notes do not mature at different times, but on the same day, each being dated May 12, and for the three months.

The exact value of one of the notes on May 26, would be the first sum named, $2,959.50, but the value of a note maturing later than three months from May 12, would be less (not more) than $2,959.50.   The sum mentioned, $2,972.50, as having been paid " for the second note," represents the value of either of the notes about a month later than May 26.   This witness did not appear before the referee, but testified as above, according to the notes of evidence taken at the second trial of the case and submitted to the referee.   It is to be regretted that the attention of the witness was not called to the fact that the notes mature at the same date.   The notes were in court, or at least copies of them in the statement, and it then might have appeared in the evidence why the sum of $2,972.50 was named by the witness.   It does appear from the evidence that the checks which the witness claimed to have given for the notes were not in court, but it does not appear whether the witness was speaking from memory, or by the assistance of memoranda, or from a calculation made at the time.

Cokefair testified that he received from Hotchkiss, in payment for the two notes, two checks.   But later in his evidence it appears that he must have received at least four checks, for he received three checks for one of the notes.   He said that for one of the notes he received from Hotchkiss a check for $1,500, a check for $1,370, and a check to bearer, which he had cashed, for about $100.   He also produced his deposit book in the Plainfield National Bank showing two credits on June 2, 1892, one for $3,000, and one for $1,370, and he explains that $1,500 of the $3,000 and the credit for $1,370 represent the two checks for those amounts which he received from Hotchkiss. These checks he says he received for the note No. 8,457, and he adds that for the other note, No. 8,489, he received from Hotchkiss " either one or two checks."   The referee is not able to find in the evidence that Hotchkiss testified as to the number of checks he gave for the notes, or that his attention was called to the number of checks as distinct from the amount thereof.

In his re-examination at the second trial, he uses the words "check" and "checks" indiscriminately.

At this trial, which took place January 11, 1894, Hotchkiss claimed to be able to produce the checks which he gave for the notes, but it was not until November, 1894, that counsel agreed that the rule for a new trial should be made absolute. In the meantime the business of the plaintiff passed into the hands of a receiver, and Hotchkiss, the plaintiff's manager, was sentenced to serve a term of imprisonment; the latter fact probably accounts for the nonappearance of Hotchkiss before the referee, and Cokefair testifies at length as to the efforts he made to obtain from the receiver of the plaintiff's business an opportunity to examine the books and papers of Hotchkiss & Company.

Under all the evidence in the case, in view of the fact that both Hotchkiss and Cokefair testified that the notes were sold by Spooner to Cokefair and by the latter to Hotchkiss, and the fact that Spooner's letters, written immediately after the transaction, show that he was dealing with Cokefair alone; in view of the unsatisfactory character of Spooner's evidence, which, according to the defendant, is the evidence of one who played the part of a rascal in the transaction, the referee does not think that the evidently inaccurate statement by Hotchkiss, that one note fell due later than the other, or the statement of a sum (apparently too large) as having been paid for the "second note," ought to defeat the plaintiff's claim. If Hotchkiss and Cokefair were in collusion, as claimed by the defendant, the notes in suit were before them, and such a palpable mistake as that made by Hotchkiss (who, it was not denied, was in the banking business for at least ten years) relative to the maturity of the notes, or his intimation that of two notes of even date the one first maturing was of less value than the other, is hardly consistent with a prepared story to carry out a fraud. The referee is inclined to account for this evidence on the ground of inadvertence, and the fact that the attention of the witness was not called to the very apparent mistake. The evidence of the defendant suggests the same consideration. He testified at one time that the face value of the notes he received was $10,000, at another $5,000. It is conceded that they amounted to $10,500. In the evidence of January 11, 1894, the defendant was asked: "Q. Did you sign any other paper at the same

time? (as the notes). A. No, sir." But being confronted with the certificates of no defense, he admitted that they were signed at the same time.

Both Spooner and Cokefair testify that the $1,500 given to Spooner by Cokefair in addition to the notes was represented by a check drawn by Hotchkiss & Co. Of this check Cokefair says: "Hotchkiss & Co. were private bankers, and I drew my check on Hotchkiss & Co., and, instead of their certifying that as private bankers, they simply drew me their check on the American Exchange National Bank for the $1,500 which Mr. Spooner accepted the same as a certified check."

The claim of the defendant is that he gave the notes in suit to Spooner to sell for cash, and that his sale for part cash and the balance in notes was a fraud, and he, therefore, proposes to rescind the contract. The referee is unable to see how this can be done under the evidence. He who seeks to avoid a contract on the ground of fraud must act promptly. He cannot delay. He cannot hold on to the fruits of the contract and at the same time repudiate it. He cannot at one time affirm and deny. He must, as soon as he discovers what he deems a fraud on his rights, take his position either for or against the contract and maintain that position without change. When the defendant ascertained that Spooner had sold his notes in part for notes, it was his duty at once to have sought out the holders of the notes made by himself and offered to return whatever Spooner had received and demanded the return of the notes Spooner sold. This he does not appear to have done. On the contrary, from the defendant's letter of August 10, 1892, it seems that he assented to the sale with the understanding that the paper was taken temporarily. The sale by Spooner was made on or about May 26, 1892. No evidence was given before the referee as to when the defendant first heard that his notes had been sold in part for other notes. There was no offer by the defendant to show that as soon as he learned of the terms of sale he attempted to rescind it. The only evidence of a desire on the part of the defendant to repudiate the sale is in the correspondence. The letter from Hotchkiss to defendant, dated August 8, 1892, would indicate that there had been some previous correspondence on the subject of a sale by Hotchkiss of the notes received by Roehm from Spooner. The defendant's letter of August 10, 1892, offers

to return the $1,500 in cash and all the notes received by Spooner. In view of the silence of the defendant as to when he first knew of the terms of the sale, and what efforts, if any, were at once made by him to regain possession of his notes, the referee is of the opinion that his offer of August 10, 1892, came too late.

Six of the eight notes received by Spooner appear to have been deposited for collection, and part of them protested as late as September 29, 1896.

No propositions of law were discussed before the referee, but the plaintiff submitted a brief on the question of set-off, and contended that the defendant could not set off in this action the two notes held by defendant, on one of which, in amount $2,500, the plaintiff was liable as indorser, and on the other, in amount $1,000, as maker, for the reason that the said notes did not mature till after this suit was brought. The plaintiff, in support of this proposition, cited Garrison v. Paul, 1 Pennypacker, 380 ; Roig v. Tim, 103 Pa. 115 ; Gunnis v. Cluff, 111 Pa. 512 ; Zuck v. McClure, 98 Pa. 541. The referee is of the opinion, from an examination of the authorities, that the point is well taken by the plaintiff, and although it would seem that the defendant ought to be relieved to the extent of the said two notes on which the plaintiff is liable, yet there appears to be no such relief in law—at least prior to judgment.

The referee was requested to find on behalf of defendant the following facts :

1. That the two notes in evidence were two or four notes made by John Roehm to his own order for $3,000, each dated May 12, 1892, two of them at three months and two at four months' time.

2. That these four notes were given to C. H. Spooner as a broker to raise money upon. That Spooner took them to New York, saw one Charles C. Cokefair upon the subject, and also Philo P. Hotchkiss, representing the plaintiff ; that a deal was proposed between Spooner and Hotchkiss for the paper, which resulted in Cokefair delivering to Spooner a note of Hotchkiss & Co. for $1,000, a joint note of Cokefair, Kendall & Swift, indorsed by Hotchkiss & Co., for $2,500, note of James S. Kendall for $1,500, note of J. H. Swift for $1,500, four notes of C. Cokefair for $500, $750, $1,000, and $1,750 each, and the check of Hotchkiss & Co., for $1,500 ; the said four notes of Roehm

were delivered to said Cokefair in pursuance.of said deal, the consideration being the notes and checks above set forth.

3. That none of said notes was paid, and the only money or thing of value Roehm received from Spooner was the sum of $1,000.

4. That two of said notes, those running for four months, were passed to J. Hull Browning, who recovered from Roehm the full amount of the same, he being an innocent holder for value.

5. That the said Hotchkiss, Cokefair, Kendall and Swift were all connected in schemes of doubtful reputation in New York, and if not worthless and insolvent at the time of the transaction they became so, one of Cokefair's notes going to protest within thirty days from said deal.

6. That Hotchkiss had full knowledge of the consideration given for the Roehm notes, from the fact that Spooner had talked with him about them; that he had proposed several schemes to him; that Hotchkiss, in pursuance of what was said to him by Spooner, had sent his attorney to Philadelphia to see Roehm and inquire as to his means and the validity of the paper; that he learned of the ability of Roehm, and that he required the money to assist his customers in paying the liquor license tax; that thereafter the deal with Cokefair was carried out by his delivering to Spooner in consideration of the Roehm notes the aforesaid notes of Hotchkiss, Cokefair, Kendall and Swift, and the check of Hotchkiss; that two of the Roehm notes were subsequently found to be in the hands of Hotchkiss & Co., and the two others in the hands J. Hull Browning.

7. That no other consideration passed from Hotchkiss & Co. to any one for said two notes or either of them.

8. That the dealings between Cokefair and Spooner were known to Hotchkiss before the deal was completed, and Cokefair was merely the go-between or agent of Hotchkiss in the transaction.

9. That there was no business reason for Hotchkiss to discount the paper of Roehm, and the inducement was the deal which was carried out in combination with Cokefair and Spooner.

10. That the failure of the plaintiff and the witness, Cokefair, to produce any book, check, memorandum, receipt, or written evidence of any kind confirmatory of their evidence, after a

statement that the same existed, is to be taken as evidence
against the alleged facts which said books or papers could cor-
roborate.

11. That the transfer of notes between Cokefair and Spooner
was of a date not earlier than May 26, 1892.

12. That the failure of Hotchkiss and Cokefair to account for
the proceeds of two notes passed to Browning is to be taken
strongly against the evidence of any payments, as consideration
for the two notes in suit, as between Cokefair and Hotchkiss.

13. That there was an entire failure of consideration for the
notes in suit.

14. That Hotchkiss had knowledge of the whole transaction
prior to the receipt by him of the notes.

The referee declines to find as requested in every point
except as it is in accordance with the following :

FACTS FOUND BY THE REFEREE.

1. That on May 12, 1892, the defendant made four promis-
sory notes each for $3,000, two at three months, and two at
four months, to his own order, and by him indorsed.   Two of
said notes, the ones in suit, are at three months, and have
attached to them the certificates of the maker that they are
" genuine business notes given for value received, and that
there is no defense to the same in law or equity."

2. That on or about May 12, 1892, the defendant gave all of
the said four notes to C. Alfred Spooner in order that Spooner
might sell the notes and account to the defendant for the pro-
ceeds.   Spooner had represented to the defendant that his busi-
ness in part was placing good commercial paper.   At the time
Spooner had an office in the Girard Building, Philadelphia.

3. That on or after May 26, 1892, Spooner sold all four of
said notes to Charles C. Cokefair, and received thereof a check
drawn by Hotchkiss & Company for $1,500, and the before men-
tioned notes.

4. That two of the said four notes made by the defendant
(the two not in suit) were sold by Cokefair to J. Hull Brown-
ing, who recovered the full amount of same from the defendant.

5. That on or after May 26, 1892, the two notes in suit were
sold by Cokefair to the plaintiff, who paid for them by checks,
and without knowledge of the consideration given by Cokefair.

6. That Spooner delivered to the defendant all of the notes which he received from Cokefair, and $1,000 of the $1,500 received by him from the proceeds of the check.

7. That none of the notes received by Spooner have been paid. All the said notes were duly protested, except three of the notes made by Cokefair, which bear the face value of $1,750 L. ($750) M., and $500, and all of the notes received by Spooner were deposited in the bank for collection, except two of the notes made by Cokefair for $1,750 and $500.

On the basis of the foregoing facts as found, the referee awards a judgment in favor of the plaintiff and against the defendant in the sum of $6,000 with interest from August 15, 1892.

The court dismissed the exceptions to referee's report.

*Errors assigned* were in dismissing exceptions to referee's report.

*Thomas R. Elcock*, with him *John V. McGeoghegan*, for appellant.—The general rule is that the return must be made within a reasonable time after the fraud or other ground for rescinding is discovered. But in an action to rescind, it has been held sufficient tender, where notes were the consideration, if they are produced at the trial, and an offer made to cancel them: Yard v. Patton, 13 Pa. 285; Babcock v. Case, 61 Pa. 427; Hathorne v. Hodges, 28 N. Y. 486; Stevens v. Hyde, 32 Barb. 171; Green v. Smith, 29 Hun, N. Y. 166; White v. Dodds, 42 Barb. 554; Thurston v. Blanchard, 22 Pick. 18; Ryan v. Brant, 42 Ill. 86; Wood v. Garland, 58 N. H. 154.

At whatever stage of the contract the fraud was discovered, the contract can be rescinded, provided the parties can be put in statu quo: Sloane v. Shiffer, 156 Pa. 64; Chanter v. Leese, 5 M. & W. 698.

Where a lender before he pays over money on a borrower's note, discovers that the borrower is insolvent, he has a right of a similar nature to that of stoppage in transitu: Dougherty Bros. & Co. v. Bank, 93 Pa. 227; Lancaster Co. Nat. Bank v. Huver, 114 Pa. 216; Agra Bank v. Hoffman, 34 L. J. Ch. 285.

In administering equity in our common law forms, insolvency as well as fraud has always been held to be a ground of equit-

able interference to protect a set-off or cross-demands, in order that injustice should not be done, and that such rights be secured: Story's Equity Jurisp., sec. 1430; Morgan v. Bank of North America, 8 S. & R. 73; Murray v. Williamson, 3 Binney, 135; Waterman on Set-off, sec. 431; Rothschild v. Mack, 115 N. Y. 1; Richards v. LaTourette, 119 N. Y. 54; Quick v. Lemon, 105 Ill. 578; Edminson v. Baxter, 4 Hayw. (Tenn.) 112; Robbins v. Holley, 1 T. B. Mon. (Ky.) 194; Forbes v. Cooper, 88 Ky. 285; Littlefield v. Albany Bank, 97 N. Y. 581; Tuscumbia, etc., R. R. Co. v. Rhodes, 8 Ala. 206; Wray v. Furniss, 27 Ala. 471; Bettison v. Jennings, 8 Ark. 287; Hobbs v. Duff, 23 Cal. 596; Pond v. Smith, 4 Conn. 302; Goodwin v. Keney, 49 Conn. 563; Hall v. Kimball, 77 Ill. 161; Doane v. Walker, 101 Ill. 628; Keightley v. Walls, 27 Ind. 384; Rowzee v. Gregg, Litt. Sel. Cas. (Ky.) 487; Collins v. Farquar, 4 Litt. (Ky.) 153; Payne v. Loudon, 1 Bibb. (Ky.) 518; Markham v. Todd, 2 J. J. Marsh, (Ky.) 64; Kentucky Flour Co. v. Merchants' Nat. Bank (Ky. 1890), 13 S. W. Rep. 910; Marshall v. Cooper, 43 Md. 46; Field v. Oliver, 43 Mo. 200; Lindsay v. Jackson, 2 Paige (N. Y.), 581; Gay v. Gay, 10 Paige (N. Y.), 376; Smith v. Felton, 43 N. Y. 419; Davidson v. Alfaro, 80 N. Y. 660; Brazelton v. Brooks, 2 Head (Tenn.), 194; Fields v. Carney, 4 Baxt. (Tenn.) 137; Hamilton v. VanHook, 26 Tex. 302; Thrall v. Omaha Hotel Co., 5 Neb. 295; 25 Am. Rep., 488; Pignolet v. Geer, 19 Abb. Pr. (N. Y.) 264; Keep v. Lord, 2 Duer (N. Y.), 78; Bradly v. Angel, 3 N. Y. 475; Simson v. Hart, 14 Johns. (N. Y.) 63.

*John Sparhawk, Jr.* and *J. Martin Rommel*, for appellee.— The finding was reviewed by the court in banc and confirmed. Under the well settled rule of this court, therefore, it will not reverse except for palpable error: Warner v. Hare, 154 Pa. 548; Brotherton v. Reynolds, 164 Pa. 134; Gibbons v. Gibbons, 175 Pa. 475.

The appellant accepted and retained the consideration given in exchange for his notes.

A valid set-off must be of a debt or demand due at the time of the commencement of the action in which it is interposed. If the claim is not then ripe for action it cannot be set off: Roig v. Tim, 103 Pa. 118; Garrison v. Paul, 1 Penny. 380; Zuck. v.

McClure, 98 Pa. 541; Gunnis v. Cluff, 111 Pa. 512; Morrison v. Moreland, 15 S. & R. 61; Sennett v. Johnson, 9 Pa. 335; Huling v. Hugg, 1 W. & S. 418.

PER CURIAM, April 19, 1897:

This action to recover the amount of two promissory notes made by the defendant to his own order and by him indorsed, etc., has been thrice tried in the court below, and uniformly resulted in favor of the plaintiff. The last trial was before a referee under the act of 1874, the others were each before a jury.

From the testimony before the referee he found that the notes in suit were sold by defendant's agent to Charles C. Cokefair of New York City, by whom they were sold before maturity to the plaintiff " who paid for them by checks and without knowledge of the consideration given by Cokefair." The consideration moving from Cokefair in his purchase was part cash and residue in notes of himself and others, the greater part of which afterwards proved worthless. Among these were two indorsed by the plaintiff.

The referee was requested by the defendant to find that the plaintiff "had full knowledge of the consideration" aforesaid; but he refused to do so. Exceptions to his report were dismissed and the report confirmed by the court below. In such circumstances the findings of fact by a referee, or what is the same thing, his refusal to find, cannot be reversed where there is evidence to support the finding, or, in the case of his refusal to find as requested, there is no evidence that required him to do otherwise. While it is not ordinarily the province of an appellate court to decide on the preponderance of evidence in such cases, it may not be amiss to say that, as it appears to us, the referee was right in refusing to find as requested, and also to suggest that the evidence of collusion between plaintiff and Cokefair is unsatisfactory and inconclusive. The discrepancy, as to dates and other details, as narrated by the witnesses, bears quite as strongly against the allegation of conspiracy as it does in support of it.

The offer to rescind was too late. It was not made until more than a month after the maturity of Cokefair's note. If the defendant did not authorize the exchange of notes he should have said so as soon as the new notes came into his hands.

The notes indorsed by the plaintiff and held by defendant did not mature until after this suit was brought. Defendant's offer to set off the amount of said notes was therefore properly refused.

We find nothing in either of the assignments of error that requires discussion. A careful consideration of the record has failed to disclose any substantial error therein.

Judgment affirmed.