| 57 | 202 |
| 147 | 440 |
| 57 | 202 |
| 160 | 269 |
| 161 | 261 |
| 57 | 203 |
| 166 | 625 |

57    202
f37SC 1184

# The Farmers' and Mechanics' National Bank *versus* King.

1. Equity will follow a fund through any number of transmutations and preserve it for the owner so long as it can be identified: no matter in whose name the legal right stands.

2. If money has been converted by a trustee or agent into a chose in action, although the legal right may have been changed, equity regards the beneficial ownership.

3. When a bank receives deposits, it becomes debtor to the depositor, and may pay the debt in answer to his checks and thus its liability be extinguished in absence of interference by his principals, to whom it belongs.

4. But when the principals assert their right to the money before its repayment, give notice of their ownership and their unwillingness that the money should be paid to the agent, his right to reclaim it ceases.

5. If an agent lends his principal's money on a note to himself, the debtor cannot pay the agent after he has been informed of the superior right.

6. Where a principal can show that his money has been placed in the hands of another by his agent, it is no objection to the owner's claim that the other has promised to pay the agent.

7. A creditor of a depositor who attaches money to the credit of his debtor in the bank, is in no better position than the depositor.

8. Earmark is only an index enabling a beneficial owner to follow his property. It is not indispensable to enable him to assert his right to the property, its product or substitute. Evidence of substantial identity may be attached to the thing itself or it may be extraneous.

9. If an agent, &c., mingle his principal's money with his own so that it cannot be followed, the principal cannot recover it specifically. But the agent does not convert himself into a mere debtor; the principal may claim from the admixture the sum which belonged to him.

10. A collector of rents deposited moneys of his principal in a bank in his own name, it was attached by a creditor of the depositor, and immediately afterwards, notice of ownership, &c., was given by the principal. *Held*, that the attaching creditor stood in the position of the depositor and could recover only what the depositor could.

11. Jackson *v.* Bank of United States, 10 Barr 61, explained.

January 10th 1868. Before THOMPSON, C. J., STRONG, AGNEW and SHARSWOOD, JJ. READ, J., at Nisi Prius.

Error to the District Court of *Philadelphia*: No. 62, to January Term 1867.

In the court below, this was a scire facias against the Farmers' and Mechanics' National Bank, garnishees in a foreign attachment in which Robert P. King was plaintiff, and John H. Curtis, Jr., was defendant.

On the trial it appeared that John H. Curtis and the defendant had been in partnership as real estate brokers and agents under the name of John H. Curtis & Son. John H. Curtis died on the 4th of February 1864, and the business was afterwards continued by the defendant alone, under the same name. He was agent for collecting rents for the plaintiff, and in May 1866, was in plaintiff's debt between $1100 and $1200. Curtis was agent

also for The Philadelphia Saving Fund Society, for the trustees of the Fotteral estate and others. The rents were deposited with the garnishee after the dissolution of the partnership as well as before, in the name of John H. Curtis & Son. He deposited his private funds in the Tradesmen's Bank, and his client's funds with the garnishees. The defendant disappeared on the 30th of April 1866, and has not returned to his office since. He was then largely insolvent. He was last seen in Philadelphia about May 8th 1866.

On the 31st of May, before 10 o'clock A. M., the attachment was served on the garnishees, and there was at that time a balance of $1140.36 in the bank to the credit of J. H. Curtis & Son, which had been made up to May 18th 1866.

Five minutes after the service of the attachment, this notice was served on the cashier of the garnishees.

" To the President and Directors of the Farmers' and Mechanics' National Bank.

"I beg to inform you, that the whole or the greater part of the moneys deposited in your bank, in the name of John H. Curtis & Son, are, in fact, the moneys of The Philadelphia Saving Fund Society, and of Winfield S. Russell and Edwin T. Eisenbrey, trustees, and can be specifically shown to be such, and I notify you, on their behalf, not to pay over the same to the said John H. Curtis & Son, or to any person on their behalf.

Yours, respectfully,

HENRY WHARTON."

Checks were never paid by the garnishees, unless as a matter of favor to persons leaving the city, before 10 o'clock in the morning.

The defendants offered to prove the following additional facts:—

" That the account attached was in the name of John H. Curtis & Son. That the said firm carried on a large business as real estate brokers, or agents, and deposited in the said bank account their collections for various parties, their cestuis que trustent. That John H. Curtis, the defendant, absconded on the 30th day of April 1866. That there was then in the said account the sum of $1329.36; but that the said John H. Curtis, before absconding, drew checks against it to the amount of $1276.25, which were presented and paid within a few days afterwards. That there was thus left in the bank only the sum of $53.11. That the business of the said firm was carried on, after Curtis absconded, by George W. Coppuck; no checks were, however, drawn after that date. That the said George W. Coppuck collected large sums of money for various parties after that date, and deposited these trust moneys in this bank account. That among the moneys so

[Farmers' and Mechanics' National Bank *v.* King.]

collected and deposited, were $426.35, the moneys of ' The Phila-delphia Saving Fund Society,' and $409.46, the moneys of the trustees of the Fotteral estate. That the moneys so deposited made up the account to the sum of $1140.36, the balance due at the date of the attachment."

The judge refused to admit the evidence, and sealed a bill of exception.

The defendants submitted several points, which the court (Hare, A. J.) refused to affirm, and instructed the jury, that under the circumstances their verdict must be for the plaintiff.

The verdict was for the plaintiff for $1040.36.

The garnishees took a writ of error, and assigned for error the rejection of their offer of evidence and the instruction of the court.

*H. Wharton* (with whom was *R. L. Ashhurst*), for plaintiff in error.—The title of the true owners to the money after it was deposited was precisely as it had been before : Taylor *v.* Plumer, 3 M. & S. 562, 574 ; Eden on Bankruptcy 2 ; Pennell *v.* Deffell, 4 De G., M. & G. 389 ; 23 Eng. Law & Eq. 460.

They referred to and commented on the cases supposed to have decided the question otherwise : Jackson *v.* Bank of U. S., 10 Barr 61 ; Bank of Northern Liberties *v.* Jones, 6 Wright 536 ; Sims *v.* Bond, 5 B. & Ad. 389 ; Cooke *v.* Seeley, 2 Exch. 746.

The account was sufficiently distinguished as a firm account by continuing in the same name : Cooke *v.* Seeley, *supra ;* Bodenham *v.* Hoskins, 13 Eng. Law & Eq. 222 ; s. c. 2 De G., M. & G. 903.

A fund may in equity be followed wherever its substantial identity can be traced : U. S. *v.* Waterbury, Davies' U. S. Rep. 15 ; Goepp's Appeal, 3 Harris 428 ; Scott *v.* Surman, Willes 407 ; Whitcomb *v.* Jacob, 1 Salk. 160 ; Taylor *v.* Plumer, *supra.*

*G. D. Budd* and *H. E. Wallace,* for defendant in error, cited Cooke *v.* Seeley, Jackson *v.* Bank of U. S., Bank of Northern Liberties *v.* Jones, Pennell *v.* Deffell, Taylor *v.* Plumer, Boden-ham *v.* Hoskyns, Goepp's Appeal, *supra ;* Tassell *v.* Cooper, 9 C. B. 509 ; Pott *v.* Clegg, 16 M. & W. 321.

The opinion of the court was delivered, February 20th 1868, by
STRONG, J.—There was evidence at the trial that the money which had been deposited in the bank by John H. Curtis was not his own, but that it belonged to his clients. He obtained it as their agent, and he held it as such. And, had the additional evidence offered been received, it would have appeared that at least $835.81 of the amount belonged to the Philadelphia Saving Fund Society and to the trustees of the Fotteral estate. It had been collected for them and deposited to the credit of their agent. Their right to it was

not lost because it was thus deposited. It is undeniable that equity will follow a fund through any number of transmutations and preserve it for the owner so long as it can be identified. And it does not matter in whose name the legal right stands. If money has been converted by a trustee, or agent, into a chose in action, the legal right to it may have been changed, but equity regards the beneficial ownership. It is conceded, for the cases abundantly show it, that when the bank received the deposits it thereby became a debtor to the depositor. The debt might have been paid in answer to his checks, and thus the liability have been extinguished, in the absence of interference by his principals, to whom the money belonged. But surely it cannot be maintained that when the principals asserted their right to the money before its repayment, and gave notice to the bank of their ownership, and of their unwillingness that the money should be paid to their agent, his right to reclaim it had not ceased. A bank can be in no better situation than any other debtor. If an agent receives money of his principal and lends it, taking a promissory note to himself, the note belongs to the principal, and the borrower may not pay the agent after he has been informed that there is a superior right, and has received notice not to pay the agent. This is a rule of general application. Story, in his treatise on Equity, in section 1259, remarks: "It matters not in the slightest degree into whatever other form different from the original the change may have been made, whether it be that of promissory notes or of goods or of stock, for the product or the substitute for the original thing still follows the nature of the thing itself, so long as it can be ascertained to be such." Even at law an unknown principal may often avail himself of a contract made with his agent. In the case of a simple contract he may show that the apparent party was his agent, and treat the contract as made with himself, not, however, injuriously affecting the rights of the other party. In many of these cases he is allowed to sue directly upon the contract. But wherever he can show that his money has been placed in the hands of another by his agent, it is no objection to his claim that that other has promised to pay it to the agent. In Frazier v. The Erie Bank, 8 W. & S. 18, it was ruled that if an agent procure the note of his principal to be discounted and deposit the proceeds in bank to his own credit, the principal may maintain an action therefor against the bank in his own name, and this though the bank had no notice when the deposit was made that the money deposited did not belong to the agent. There are several English cases at law, some cited in the argument, and others referred to by Read, J., in Bank of Northern Liberties v. Jones, 6 Wright 536, that may be noticed; Sims v. Bond, 5 B. & Ad. 389, is one. It was an action brought to recover the balance of an account with a banker, in the name

[Farmers' and Mechanics' National Bank *v.* King.]

of another, upon the allegation that it was the money of the plaintiffs, and it was held that plaintiffs who seek to recover the balance of such an account must show that the loans were made by them. So in Tassell *v.* Cooper, 9 C. B. 509, where the bailiff of Lord Dudley had paid a check belonging to his employer into his own account with certain bankers, who *received* the cash for it, and gave credit for it in the bailiff's account, it was held that the bailiff could recover it, even after Lord Dudley had given notice to the bankers of the fraud, and indemnified them. These cases are hardly reconcilable with our own case of Frazier *v.* The Erie City Bank. It is perhaps fair to surmise that they would have been differently decided did the English system of pleading allow parties to stand in a court of law either as plaintiffs or defendants on a mere equitable right. In Pennell *v.* Deffell, 23 Eng. Law & Eq. 460, we have the rule as understood in equity. It was a contest between an official assignee in bankruptcy and insolvency and the executors of a prior deceased assignee, who had kept an account with bankers, into which he had paid his own money, as well as moneys of the trusts. The accounts were not distinguished as official accounts, but were opened in the depositor's own name. There was nothing to show that he was not alone interested in the sums due from time to time from the bankers. Lords Justices Knight Bruce and Turner held that the assignee was entitled as against the executors of the depositor. The former said that "when a trustee pays money into a bank to his credit, the account being a simple account with himself, not marked or distinguished in any other manner, the debt thus constituted from the bank to him is one which, as long as it remains due, belongs specifically to the trust as much and as effectually as the money so paid would have done had it specifically been placed by the trustee in a particular repository and so remained." There is much more in the case. It is particularly to be noticed that the moneys of several distinct trusts were carried into the account; that the trustee's own money had been mixed with them, and that a rule was laid down for determining what belonged to the trusts and what to the depositor. It is true, Pennell *v.* Deffell does not determine the right to sue at law; but it determines the ownership of the fund under the circumstances described; and if that is established with us there can be no difficulty as to the right of the owner to sue. This was decided in Stair *v.* The York National Bank, 5 P. F. Smith 364, a case decided at last May Term, in which the opinion was delivered by our brother Agnew. There W. W. Wolf had deposited in the bank a sum of money belonging to Sherer's estate. It was credited in a pass-book in which other credits were given to him as sheriff, yet Sherer's administrator *de bonis non* was allowed to recover it from the bank. A deposit

in bank, then, does not change the property in trust funds deposited by a trustee. The depositor may become a creditor of the bank, but he holds the contract in trust as he held the money before. It is not applicable to the payment of his debts to a general creditor. And a creditor who attaches the debt due from the bank to him can be in no better condition than the depositors. At most he becomes a statutory assignee of a naked legal right, with the beneficial ownership in another.

It is strenuously insisted, however, that Jackson v. The Bank of the United States, 10 Barr 61, asserts a different doctrine. But that case differs materially from the present, and it is not in conflict with anything we have hitherto said. There, after a foreign attachment served, and even after a scire facias against the garnishees, the defendant had made deposits in the bank in his own name. He subsequently drew out all his deposits, the bank paying his checks without any regard to the attachment. It was held that the bank could not afterwards defend against the scire facias by attempting to show that the money deposited in fact was the money of some undisclosed principal of the depositor. When the money was paid the bank had no knowledge that it belonged to any other. There was therefore no other cause for withholding it than the attachment itself. The case seems to have been put upon the ground that the bank could not have resisted the claim of the depositor. Said Judge Coulter: "They (the bank) received it (the money) and the bills as his, entered them on their books as his, and were bound, in the absence of any attachment, to have paid the funds to him." * * "The attaching-creditor stands in the place of Warwick" (the depositor). All this is true. But how would it have been if the real owners of the funds, as in this case, had given notice to the bank of their claim to the money, and demanded it? Could they not then have resisted the claim of the depositor? Frazier v. The Erie Bank, and Stair v. York County Bank, show they could. If at the time the deposits were made they had known the money was clothed with a trust, they could not have paid it to Warwick, in disregard of the trust. The Bank of the Northern Liberties v. Jones, 6 Wright 536, decides that. Until warned to the contrary they had a right to assume the depositor was authorized to draw the money; but when warned it was not so. The judge said: "It is worthy of remark that the persons alleged by the garnishees to be the cestuis que trust never gave notice to the attaching-creditor of any claim, never appeared in court to move that the attachment should be quashed, nor took any step asserting ownership or indicative of it." Another reason given for holding the garnishees liable to the attaching-creditor was that they, after having paid the money to the

[Farmers' and Mechanics' National Bank *v.* King.]

depositor, and by their own books, papers and records given the evidence that it was his, should not be permitted to allege the contrary for the purpose of protecting themselves in a wrongful act. "The duty of the garnishee," said the judge, "was, after having received the money and bills, as the money and bills of Warwick, from himself, to have retained them until liberated by due course of law." All this is totally inapplicable to the present case. The language of the judge must be considered with reference to the facts, and, if so, Jackson *v.* The Bank of the United States does not rule the present case. Here the money remains in bank undrawn and, while thus remaining, the true owners assert their claim to it. And, had the rejected evidence been received, there would have been no difficulty in identifying that portion of it which belonged to the Saving Fund Society and to the trustees of the Fotteral estate. $835.81 of the money in bank was theirs. It was collected by Curtis and deposited since any check was drawn, and unless their right to it was lost by the deposit, it is still theirs. That the fact of depositing it did not destroy their ownership is settled by the cases already cited, among which are our own Bank *v.* Jones, and Stair *v.* York County Bank. But it is insisted there was no ear-mark to the money. What of that, if the money can be followed, or if it can be traced into a substitute? This is often done through the aid of an ear-mark. But that is only an index, enabling a beneficial owner to follow his property. It is no evidence of ownership. An ear-mark is not indispensable to enable a real owner to assert his right to property, or to its product or substitute. Evidence of substantial identity may be attached to the thing itself, or it may be extraneous. It it freely admitted that if a trustee, or agent, receive money of a *cestui que trust*, or principal, and mingle it with his own so that it cannot be followed, the *cestui que trust* or principal cannot recover it specifically. This is not because the ownership is changed, but because a court cannot lay hold of the property as that of the owner. But in regard to money, substantial identity is not oneness of pieces of coin or of bank bills. If an agent to collect money puts the money collected into a chest where he has money of his own, he does not thereby make it all his own and convert himself into a mere debtor to his principal. The principal may by the law claim out of the chest the sums which belonged to him before the admixture: Pennell *v.* Deffell, *supra.*

Applying now what we have said to the present case, the evidence offered and rejected should have been received, and the jury should been instructed that, if they believed it, $835.81 of the fund in bank were not the property of John H. Curtis, and were not liable to attachment as such.

It is apparent in this view of the case, that it is quite immaterial whether the attachment was served before the notice of the

[Farmers' and Mechanics' National Bank *v.* King.]

Saving Fund Society and of the trustees of the Fotteral estate. The attaching-creditor stands in the position of the depositor, and can recover only what the depositor could.

The judgment is reversed, and a *venire de novo* awarded.