# Commonwealth *v.* Tradesmen's Trust Co., Appellant (No. 1).

*Trusts—Trust funds—Confusion of funds—Set-off—Contracts —Failure of performance—Trust companies—Commission—Receiver.*

. 1. Where a trustee has by his own wrongful act converted trust funds to his own use and mingled them with his own funds or the funds of others, the rule is that if the identity of the fund or property can be traced, it will be subjected to the rights of the cestui que trust in its new form, but whenever the means of identification fails, as where the property or money is mixed with a general mass or fund of the same description, the right to pursue it fails.

2. A trust company which had a contract with a builder by which it sold certain securities belonging to the builder under an agreement that the funds received therefrom should be subject to the check of the builder and should be used in a building operation, wrongfully mingled the funds so received with its own funds. The trust company closed its doors and a receiver was appointed. The builder died insolvent and his representatives and those interested in the building operation claimed the fund. The receiver claimed the right to set off certain notes upon which the builder was liable, alleging that the trust funds could not be traced. *Held* (1) The fund having been mingled with the funds of the trust company could not be followed as a trust fund. (2) Such notes owing by the builder's estate as were due and payable could be set off by the receiver of the trust company. (3) The claim of the builder's estate and of those interested in the building operation to require the trust company to refund a commission it had charged on the ground that it had not all been earned was no higher than the claim of a general creditor.

Argued May 5, 1915. Appeal, No. 5, May T., 1915, by Franklin Spencer Edmonds and Charles I. Cronin, from decree of C. P. Dauphin Co., Commonwealth Docket, 1911, No. 219, dismissing exceptions to report of auditors in case of Commonwealth, ex rel. John C. Bell, Attorney General, v. Tradesmen's Trust Company. Before BROWN, C. J., MESTREZAT, ELKIN, STEWART and FRAZER, JJ. Modified and affirmed.

Petition by the Commonwealth at the relation of the attorney general to declare a trust company insolvent and for the appointment of a receiver.

Exceptions to report of Henry S. Borneman, Esq., and Eugene Snyder, Esq., Auditors.   Before McCarrell, J.

The facts appear by the opinion of the Supreme Court.

The court dismissed the exceptions.   Franklin Spencer Edmonds and Charles I. Cronin appealed.

*Errors assigned* were in dismissing the exceptions.

*E. Spencer Miller,* for appellants.

*Paxson Deeter,* with him *Samuel M. Clement, Jr.,* for appellee.

Opinion by Mr. Justice Frazer, July 3, 1915:

John Megraw, a builder in the City of Philadelphia, undertook what was known as the Whitby avenue operation, consisting of 118 houses.   The money with which this operation was carried on was raised by means of collateral notes secured by mortgages upon the lots. Title to the properties was transferred to a straw man acting for the Tradesmen's Trust Company, the financing agent, and mortgages and ground rents were created and sold from time to time, and the proceeds deposited with the trust company to be used in the building operation.   The trust company took title to these securities and as sold assigned them to the purchasers with a guarantee of the trust company to complete the buildings on the lots covered by them.   The money received from the sale of the securities was deposited by the trust company in its general account, and was subject to the checks of Megraw, who superintended the operation, for the purpose of paying materialmen, contractors, etc. No deposits were made by Megraw to meet checks drawn; it was, however, the practice of the trust company, from week to week, as vouchers for work were

presented, to transfer from the books of the company an amount sufficient to cover the checks. The account of the operation was kept in what was known as the "General Operation Ledger" of the trust company. On September 16, 1911, the trust company closed its doors and a temporary receiver was appointed. At this time there was a balance to the credit of the Megraw operation of $14,071.64 and also an individual deposit account in favor of Megraw, amounting to $1,442.89. At the same time the trust company held three notes to which Megraw was a party; one a demand note payable to his order and endorsed by the trust company, which, with interest, amounted to $7,637.50. Another note for $5,000, which matured September 25, 1911, signed by Megraw and Joseph R. Livezey and endorsed by The American Cork & Seal Company on which $500 was paid on September 25th the date of maturity, leaving a balance of $4,500 and a third note of Megraw individually, payable December 5, 1911, for $3,500. On October 11, 1911, a permanent receiver was appointed for the trust company with direction to wind up its business. Megraw died October 29, 1911, and his estate proved to be insolvent. The work on the operation continued after the company closed its doors and until about one week after Megraw's death, and as no payments were made to contractors and materialmen, they suspended work. As against the $14,071.64 in the Megraw account, the trust company charged him with $11,856, as its compensation, at the rate of four per cent. on the sale of the securities. These securities amounted in all to $296,400 of which $173,300 had been sold and the remainder were still in the hands of the company. It is contended by appellants that the contract to finance the operation was an entire one, and that as there was a failure of complete performance, the trust company was not entitled to compensation. Appellants represent the holders of all the mortgages and ground rents as well as the contractors and materialmen, in the building operation, and, also, all rights of the

Megraw estate in the funds on deposit and by agreement with the persons they represent, completed the operation in order to minimize the loss. Appellants now claim the sum of $14,071.64 above mentioned, which represents the balance received from the proceeds of the sale of mortgages and other securities, was a trust fund for the benefit of the operation and those interested therein, and could not be diverted to other purposes and that they are entitled to this fund as against depositors and other creditors of the trust company. On the other hand, the receiver contends that since the auditors found the moneys received by the trust company were mingled with its own funds, and became a part of its general assets, the relationship was merely one of debtor and creditor, and therefore no preference existed, and, that, at all events, the trust company had the right to set off the two notes above mentioned against the Megraw fund, leaving only $3,815.59 due the Megraw estate, and further, that the claim for a refund of the compensation charged by the trust company, if such right existed, was only a general creditor's claim. The Act of May 8, 1907, P. L. 192, 5 Purd. 6110, pl. 35, provides that in cases like the present the fund shall be distributed first to pay depositors; second, to pay and discharge all remaining liabilities; third, to pay the stockholders with the proviso that trust money shall be kept separate and be distributed among its proper beneficiaries. Under this act, it was clearly the duty of the trust company to keep the funds of the operation separate from its general funds; not having complied with the provision of the act in this respect, however, the question arises as to the effect of such failures on its part. Although a hardship on the beneficiaries of the fund, to hold that they must suffer by reason of the acts of the officers of the trust company in not following the direction of the statute, yet, the hardship in this case is the same which exists in all cases where a trustee has by his own wrongful act converted trust funds to his own use and mingled them with his own funds, or the funds

of others. In all such cases of conversion, the rule is that, if the identity of the fund or property can be traced, it will be subjected to the rights of the cestui que trust in its new form. No mere change of its state or form can divest it of the trust so long as it can be thus identified, but, whenever the means of identification fail, as where the property or money is mixed with a general mass or fund of the same description, the right to pursue it fails: Thompson's App., 22 Pa. 16; Columbian Bank's Est., 147 Pa. 422. This rule has been frequently applied in cases like the present where funds have been placed in a bank which has mixed them with the general funds: Lebanon Trust & Safe Deposit Bank's Assigned Est., 166 Pa. 622; Assigned Est. of the Solicitors' Loan & Trust Company, 3 Pa. Superior Ct. 244; Miller's App., 218 Pa. 50; Groff v. City Savings Fund & Trust Co., 46 Pa. Superior Ct. 423. In view of these authorities, and of the finding by the auditors, that the moneys; received by the trust company were mingled with its own funds and became a part of the general assets, appellants have failed to identify the fund in such manner as to entitle them to follow and claim it as a trust fund to the exclusion of other creditors. Megraw's estate being insolvent, the trust company would have a right as against any claim made by the estate to set off the notes held by it, signed or endorsed by the deceased: Knoll v. Commercial Trust Company, 249 Pa. 197.

The first note was due on demand and therefore could be set off at any time; the second, matured subsequent to the appointment of a temporary receiver, but prior to the appointment of the permanent receiver, and prior to Megraw's death, and at the latter date it was available as a set-off, the rule being that matured mutual obligations may be set off against each other. The fact that this note was signed by Megraw jointly with another is immaterial since the liability of the parties was joint and several: Miller v. Reed, 27 Pa. 244; Bowman's Ad-

ministrators v. Kistler, 33 Pa. 106; Hughes Est., 13 Pa. Superior Ct. 240. The first two notes were therefore properly a subject of set-off, as against the amount credited to the Megraw estate on the books of the trust company. This is not true, however, of the third note of $3,500, which was not due until December 5, 1911, subsequent to the appointment of the receiver and counsel for appellee admits it was error to allow this set-off: Farmers' & Mechanics' Bank's App., 48 Pa. 57; Chipman v. Ninth Nat. Bank, 120 Pa. 86; Hotchkiss v. Roehm, 181 Pa. 65; Sennett v. Johnson, 9 Pa. 335. As to the item of $11,856, the commission which the trust company deducted from Megraw's account, it appears these deductions were made without proper authority and before the commissions were earned, though the action of the trust company in this respect was subsequently ratified by Megraw. The company had agreed to issue its title policies and bonds for the completion of all houses in the operation; to receive and pay out of the proceeds of the sale of the securities for the expense of the operation, and, in general, to supervise the financing of the undertaking to its completion. These duties were performed only in part, and final performance was prevented by the insolvency of the company. The auditors found that in view of the large amount of work remaining to be done, there should be a reduction from the charges made and that claimants were entitled to prove their claim for such reduction only as general creditors of the company. We find no error in this conclusion.

The decree is modified in so far as it allowed the receiver to set off against appellants' claim $3,500, the amount of the note which did not mature until after his appointment; in other respects the decree is affirmed.