# CARPENTER v. NATIONAL CITY BANK OF CHICAGO.

---

EQUITY; INJUNCTION; GARNISHMENT; AGENCY; OWNERSHIP OF FUND.

1. Garnishment of a telegraph company to reach funds in its possession consisting of the proceeds of a draft payable to the debtor, who was in fact a mere agent of the drawer and who had absconded so that the draft could not be delivered to him, can give the plaintiff no right to the funds even if there had been a constructive delivery of them by delivery of the draft to another person for the debtor, where he had never had any interest in the money.

2. Where it is necessary to go into equity to restrain the disposition of a fund pending a determination with respect to its ownership, the court, having obtained jurisdiction for that purpose, retains it for all purposes. (Citing *Palmer* v. *Fleming*, 1 App. D. C. 528.)

No. 3142.   Submitted May 6, 1918.   Decided May 27, 1918.

HEARING on an appeal from a decree of the Supreme Court of the District of Columbia in a suit to determine the title to a certain fund in the hands of a garnishee.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is a suit in equity to determine whether the appellants, N. Leslie Carpenter, Joseph N. Carpenter, Sterrett Tate, and Edward E. Clark, partners, doing business as N. L. Carpenter & Company, or the appellee, the National City Bank of Chicago, are entitled to a sum of money in the hands of the Western Union Telegraph Company at the time it was instituted.

The necessary facts are these: One Hieston was engaged in the stock brokerage business in Chicago, while a man by the name of Harrison pursued a like calling in this city. When Hieston desired money in Chicago he would draw on Harrison, have the appellee bank cash the draft, "then two or three days later, when the draft reached Washington, he would either wire the funds to meet it or send another check or draft to Harrison to be discounted in Washington." The latter course was pursued "only where small amounts were involved; otherwise he would send the money by telegraph." In this way he would secure the use of the bank's money for a short period of time. Harrison and Hieston both admit that the scheme was solely for Hieston's benefit; that Harrison was Hieston's agent in the transaction; and that he, Harrison, had no interest in it whatever. Of this there is no contradiction.

Out of the proceeds of a number of drafts cashed by appellee bank for Hieston, he, in pursuance of the plan just mentioned, deposited with the Western Union Telegraph Company in Chicago $5,010, the amount in controversy, and thereby purchased a telegraph money order addressed to Harrison in Washington to meet drafts which he had cashed a few days before. The telegraph company in Washington attempted to deliver its draft in payment of the order to Harrison, but was unable to do so because he had absconded some days before. Later by direction of Hieston, the telegraph company delivered its draft to one Daniel for Harrison. While the draft was in

Daniel's possession, the appellants commenced an action against Harrison claiming that he was indebted to them and garnished the telegraph company. Some time afterwards Hieston directed the telegraph company not to pay the money to Daniel or Harrison, but to return it to Chicago and pay it to the appellee. A few days subsequently Daniels surrendered the draft to the telegraph company. Before he did so, but a few days after Hieston's order to pay the money to the appellee, the latter instituted this suit. If the money was not Harrison's when appellants caused the writ of garnishment to be served on the telegraph company, they have no right to the money, and the judgment must be affirmed.

*Mr. Benjamin Carter*, for the appellants:

In a creditor's proceeding under the law of the District of Columbia, it must be alleged and proved that the plaintiff has a judgment against the defendant and a return, upon an execution, of *nulla bona*. *Clark* v. *Walter T. Bradley Coal Co.* 6 App. D. C. 446; *Taylor* v. *Bowker,* 111 U. S. 110, 116, 117; *Case* v. *Beauregard,* 99 U. S. 119, 125.

An equitable lien cannot be created, by any act done, in favor of any party on or in relation to anything of which he did not know and on which he did not rely in that transaction. *The Carlos F. Roses,* 177 U. S. 655; *Sexton* v. *Kessler,* 225 U. S. 90; *National City Bank* v. *Hotchkiss,* 231 U. S. 50; *Mechanics & M. Nat. Bank* v. *Ernst,* 231 U. S. 60.

An equitable trust cannot be created except by intention or understanding of the parties. *Wright* v. *Ellison,* 1 Wall. 16; *Porter* v. *White,* 127 U. S. 235; *Sexton* v. *Kessler,* 225 U. S. 90.

A trust cannot be established in an aliquot part of a man's general estate by showing that trust moneys have gone into it. *National City Bank* v. *Hotchkiss,* 231 U. S. 50.

The absconding of the vendee, or his failure, pending the transit, to perform a covenant, does not give the vendor a right to stop goods in transit. *Smith* v. *Barker,* 102 Ala. 679; *Walley* v. *Montgomery,* 3 East, 585; *Wilmshurst* v. *Bowker,* 7

Mann. & G. 882; note to 19 Am. Rep. 84, 87, 88; *Evans Garden Cultivator Co.* v. *Missouri, etc., R. Co.* 64 Mo. App. 305.

An equity court will not take part in a dispute regarding property acquired or used in a criminal transaction or in one *contra bonos mores.* *Neustadt* v. *Hall,* 58 Ill. 172; *Northrup* v. *Phillips,* 99 Ill. 441; *Davenport* v. *City Bank,* 9 Paige 12; *Elliott* v. *Chamberlain,* 38 N. J. 604; *Cedar Springs* v. *Schlick,* 81 Mich. 405.

A creditor may not pursue two inconsistent remedies; he may not, after taking a personal judgment against his debtor for the full amount of the debt, assert a claim to a fund as previously assigned to him by the debtor in payment *pro tanto* of the debt. *McDonald* v. *Preston Nat. Bank,* 111 Mich. 649; *Santa Fe Bank* v. *Haskell County,* 61 Kan. 785; *Terry* v. *Munger,* 121 N. Y. 161; *Conrow* v. *Little,* 115 N. Y. 387; *Robb* v. *Vos,* 155 N. Y. 13; *Carter* v. *Smith,* 23 Wis. 497; *Dyckman.* v. *Sevatson.,* 39 Minn. 132; *Welsh* v. *Carder,* 95 Mo. App. 4; *White* v. *White,* 68 Vt. 161; *Jones* v. *Lincoln First Nat. Bank,* — Neb. —, 90 N. W. 912; *Crook* v. *First Nat. Bank,* 83 Wis. 31.

*Mr. Frederic D. McKenney* and *Mr. John S. Flannery* for the appellee.

*Mr. Chief Justice* SMYTH delivered the opinion of the Court:

The record clearly shows that Harrison never had, and never claimed, any interest in the money. He was merely a tool of Hieston in his draft-kiting project. Harrison was called as a witness and testified that the money sent by telegraph was not his, but Hieston's; that he had no interest in it; that he was acting merely as an agent for Hieston. No one contradicts this, nor is there a single circumstance in conflict with it. Even, therefore, if the delivery of the telegraph company's draft to Daniel could be said to have worked a constructive delivery of the money to him for Harrison, it would be immaterial; for still the money would not be Harrison's, but Hieston's, whose agent he was in handling it, and it could be recovered by the

owner. *Reynolds* v. *Smith,* 7 Mackey, 27, 37; *Selkirk* v. *Cobb,* 13 Gray, 313; *Farmers & M. Nat. Bank* v. *King,* 57 Pa. 202; 2 C. J. 884. There is no question of estoppel involved. Appellants could succeed only by showing that the money was Harrison's, and this they have utterly failed to do. If it was not Harrison's, it was Hieston's up to the time when the latter assigned it to the appellee, which then became its owner.

Appellee's bill is not in the nature of a creditor's bill, as urged by appellants. It was necessary for the appellee to go into equity to restrain the disposition of the fund pending a determination with respect to its ownership. Equity, having obtained jurisdiction for that purpose, retained it for all purposes. *Palmer* v. *Fleming,* 1 App. D. C. 528; *Greene* v. *Louisville & Interurban R. Co.* 244 U. S. 499, 520, 61 L. ed. 1280, 1290, 37 Sup. Ct. Rep. 673, Ann. Cas. 1917E, 88.

Appellants assert that the transaction between the appellee bank and Hieston resembles one in which, as in *Jones* v. *Warden,* 1 Mackey, 476, a person transfers stock to another with the understanding that the latter was to use it in making a better impression for himself with the Treasury officials, from whom he was seeking concessions, and then goes into equity to compel a retransfer of the stock upon the other party's refusal to return it. We do not think so. In such a case equity would, of course, leave the parties where it found them, because their arrangement was made for the purpose of deception. But there is nothing of that kind in this case so far as the appellee is concerned. It had no knowledge of Hieston's scheme. Its dealings with him were in every sense legitimate.

No error appearing, the judgment is affirmed, with costs.

*Affirmed.*

Mr. Justice ROBB did not sit with the Court in the hearing and determination of this appeal.

A motion for a rehearing was overruled July 25, 1918.