Reicheldifer's Appeal.

Argued October 10, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ. ▮▮▮▮

*Michael F. Donnelly,* for appellant.

*William W. McKim,* Special Counsel, and with him *Shippen Lewis,* Special Deputy Attorney General, and *William A. Schnader,* Attorney General, for appellee.

OPINION BY BALDRIGE, J., December 18, 1934:

This appeal is from an order of the court below overruling appellant's exceptions to the account of the Secretary of Banking, disallowing appellant's claim to be preferred in the distribution of the assets of the Manayunk Trust Company, an insolvent institution.

There was an agreed stipulation of facts, which, briefly stated, are as follows:

On October 5, 1931, Elizabeth T. Reicheldifer, through her agent, the Manayunk Trust Company, sold and assigned a mortgage she held to Abbie P. Alexander, for $1,524.50. Abbie P. Alexander transferred $1,000 from her savings fund account on October 6, 1931, and $524.50 from her checking account on October 7, 1931, in the Manayunk Trust Company, both of which sums were placed in the Miscellaneous Account on the latter date, for the express purpose of setting this sum aside for the appellant. On the same date a check was drawn by the trust company on the

miscellaneous account, in favor of Elizabeth T. Reicheldifer, for $1,524.50. This check was in due course presented to, but not paid by, the trust company, owing to the closing of its doors for business on Tuesday, October 13, 1931, Monday being a bank holiday. There was deposited in the Miscellaneous Account at all times from the date of the payment of the $1,524 to the time of the closing of the trust company more than sufficient to pay Elizabeth T. Reicheldifer the amount due her. The day the trust company closed there was $3,444 in the account.

The learned court below held that the appellant was not entitled to a preference as there was no specific money identified as belonging to her.

A trust company has authority by statute to receive and handle trust funds of others and to do a general banking business. But this was not such a transaction that ordinarily comes within the scope of a trust company's general business. The trust company was the appellant's agent for the sole purpose of transferring a mortgage, collecting the consideration, and paying it to the appellant. The meager record before us does not disclose any express authority given by the appellant to deposit the money in the trust company; nor can it be reasonably inferred that it was ever intended by the appellant that this money was to be commingled with any of the assets of the trust company. It was her property and the trust company, as her agent, should have delivered it to her instead of depositing it in its failing institution. It does not appear that she was at any time a depositor of the trust company. The relation was that of principal and agent and not that of debtor and creditor. This case, therefore, does not come within the decision in Fisher v. North Penn Bank, 77 Pa. Superior Ct. 558, cited by appellee, where the relationship of creditor and debtor existed. It is stated in 3 R. C. L. page 556: "Ordinarily, depositing

money in a bank creates between the bank and the person credited therewith the relation of debtor and creditor. It is a contract relation which cannot be created without the consent or acquiescence of both parties. The relation cannot be created by a third person, without authority, express or implied, in that regard, depositing in a bank money to the credit of another. Such a deposit is not binding upon the latter unless, with knowledge of the fact, he consents thereto or acquiesces therein, or by his conduct becomes estopped to deny the authority to make the deposit. It follows that a person making an unauthorized deposit under such circumstances thereby converts the fund, and is guilty of a conversion. The relation thus tortiously created between the bank and the owner of the money—the person to whose credit the unauthorized deposit is made—is clearly not that of debtor and creditor, but the bank, as to such person, stands in the position of one receiving and holding the property of another without his authority or consent, and hence without warrant of law; therefore, the deposit does not become the property of the bank.''

In the case of Webb v. Newhall, 274 Pa. 135, 117 A. 793, the brokers of Webb sold at his direction 150 shares of United Gas Improvement stock and deposited the proceeds in their general banking account. The brokers sent Webb a statement of the transaction and their check on the Penna. Company for Insurance of Lives and Granting Annuities, their bankers. Payment was refused, as in the meantime the brokers made a general assignment to Newhall for the benefit of creditors. The court, in its opinion, said: ''The brokers received the money in question as agents for the plaintiff, without authority to use it as their own, and he did not lose his title thereto by its deposit in their bank account so long as it could be traced. In such case, it is the identity of the fund, not of the

pieces of coin or bank notes, that controls: Farmers & Mechanics Bank v. King, 57 Pa. 202.''

The trust company never had any title to this money, it was not part of its assets, and there is no good reason in law or in equity why the appellant's property should be applied to pay the trust company's depositors.

In Cameron v. Carnegie Trust Co., 292 Pa. 114, 121, 140 A. 768, Mr. Justice SIMPSON, said: ''In Webb v. Newhall, 274 Pa. 135, under facts much like those appearing here, the preference was allowed, and that decision is controlling. The statement (page 138) that 'an entirely different question would be presented . . . . . . had the agent been a banking institution,' is shown in Conneautville Bank's Assigned Est., 280 Pa. 545, 548, to apply only where 'the usual relation between bank and depositor should exist, or the relation between them should be the [ordinary one] of trustee and cestui que trust,' which is not the situation in the present case.'' There, the Ottumwa National Bank sent to the Carnegie Trust Company a note for collection and remittance only. The bank was not a depositor of the trust company and the latter institution was then insolvent. Despite its insolvency, the trust company accepted the note, received its amount in cash, and mingled the fund so received with its other funds, and sent to the bank a draft on the Colonial Trust Company for the amount of the collection. The draft was presented for payment but was refused as the Secretary of Banking, in the meantime, had declared the Carnegie Trust Company insolvent. The court held that the relation between the bank and trust company was not the ordinary one of debtor and creditor, but that of principal and agent (Webb v. Newhall, supra, 274 Pa. 135, 138); First National Bank of Spring Mills v. Walker, 289 Pa. 252, 256, 137 A. 257); that the trust company should not have attempted to

collect the note; if it did, it should have immediately set apart the cash received in a separate and distinct account in the name of the bank only. Not having done either of these things, the trustee became a trustee ex maleficio as to the money received and mingled with its own funds. The court held that the bank was entitled to recover.

Although the facts stipulated in the case at bar do not aver the insolvency of the trust company on October 7th, it is quite significant that its doors were closed on Saturday, the 10th, and never opened again for business.

In Mehler's Appeal, 310 Pa. 26, 164 A. 619, the appellants borrowed $1,200 from the trust company on their joint note, and pledged as collateral security for the loan a certificate of 100 shares of Penna. Railroad Company stock. The note was reduced by payments until a balance of $350.14 remained due on January 21, 1930. On that day, without the consent or knowledge of appellants, the stock held as collateral was sold for the account of the trust company for $7,828, and the account was debited to the Mellon National Bank. The following day the proceeds were credited as a collection item to the trust company's account in the Mellon National Bank, and the note of the appellants was marked paid. The question involved was whether the appellants were entitled as preferred creditors to the balance of the proceeds from the sale of the stock, after deducting the balance due on their note. The court, in the course of its opinion, held that the right to priority over other creditors in the distribution of the assets of the trust company was not conferred upon the appellants by the mere conversion of the property, that to be entitled to priority, they must trace the proceeds received from the conversion and identify them as continuing in some specific fund at the time the trust company was taken over by the

Secretary of Banking. Mr. Justice DREW said: (page 29) "Once the proceeds have been traced into some fund, the entire fund is subject to the trust until the amount wrongfully placed in it has been repaid, and, consequently, appellants are entitled to that fund to the full extent of the proceeds of their property which went into it. It is not necessary that the very dollars received be identified, for it is the identity of the fund, not of the bank notes or pieces of coin that went into it, that controls: Farmers' & Mechanics' Bank v. King, 57 Pa. 202; Webb v. Newhall, supra; Vosburgh's Est., 279 Pa. 329; Conneautville Bank's Assigned Est., supra; Trestrail v. Johnson, 298 Pa. 388." In concluding, the learned justice stated (page 31): "...... the entire proceeds of the conversion of appellants' property are shown to have gone into the trust company's account in the Mellon National Bank. There has been no attempt to trace them further ...... Appellants are entitled, by an application of the principles stated above, to receive from that account, in preference to other creditors, an amount equal to their claim, or, if the balance of that account ever went below the amount of their claim, to the lowest balance thereof at any time after the proceeds of the conversion had been deposited therein."

In the case of Montagu et al. v. Pacific Bank et al. (Cal.), 81 F. 602, 604, money was deposited in one bank to the account of another, with directions to the latter to pay the amount to a third bank. The court, in the course of its opinion, said: "It is clear from this evidence that the bank had received, through its agent in New York, prior to its suspension, the deposit in question for transmittal to the Puget Sound National Bank, and that it was a special deposit, made for a specific purpose, and in the nature of a bailment." The bank to whose credit this money was deposited suspended before making payment as directed. The

court held that the deposit was in the nature of a bailment, that the plaintiff had never parted with title to the money, and, consequently, it was entitled to recover in full as against general creditors.

In Peak v. Ellicott (Kan.), 1 Pac. 499, a bank received money from the maker of a note originally given to the bank before it was due, to pay it to the holder and return the note. The bank appropriated the money and failed to pay the note. It was held that upon the subsequent failure of the bank, the maker could reclaim the money from the bank's assignee in trust for creditors. Chief Justice HORTON, in the course of his opinion, stated: ''When the bank, through its cashier, accepted the $782.50, it was not paid by the plaintiff as a deposit, nor accepted by the latter as a deposit, nor was the relation of debtor and creditor between the bank and the plaintiff created by the transaction. On the other hand, as respects this specific fund, the relation between the plaintiff and the bank must be regarded as that of principal and agent. After the bank received this sum to satisfy the note of the plaintiff, the bank held the money in a fiduciary capacity. If the money was not applied, according to the understanding of the parties, to the satisfaction of the note, it should have been returned to the plaintiff. It was not deposited to be checked out or to be loaned or otherwise used by the bank. In law, the bank held it as a trust fund, and not as the assets of the bank.''

In Titlow v. Sundquist (Wash.), 234 F. 613, Sundquist brought a suit against the receiver of the bank to recover moneys alleged to have been deposited under an express agreement between the parties that the bank would pay it to one Smith in satisfaction of a note executed to her for $1,200. Before the matter was consummated, the bank failed. The court held that the money left by Sundquist with the bank was deposited for a specific purpose, and under an express

462

agreement the bank was to execute this purpose, that the bank held the money in trust. The result was that it did not pass to the general creditors of the insolvent bank, and on the failure of the bank to execute the trust, the owner of the money was entitled to recover.

In the case at bar, the money was not deposited in the general funds of the bank, but, as stated, in a "Miscellaneous Account." The money received by the trust company was readily traced to this particular account. There was no trouble in identifying or locating it, and there was sufficient money in that special account to pay the appellant. "The rule is that, if the identity of the fund or property can be traced, it would be subject to the rights of the cestui que trust in its new form. No mere change of its state or form can divest it of the trust so long as it can be thus identified, but, whenever the means of identification fail, as where the property or money is mixed with a general mass or fund of the same description, the right to pursue it fails": Com. v. Tradesmen's Trust Co., 250 Pa. 372, 95 A. 574.

We have not overlooked, in Cameron v. Carnegie Trust Co., supra (292 Pa. 114, 120), Mr. Justice SIMP-SON's citation of 3 Pomeroy's Equity Jurisprudence (4th ed.), §1048 (e), pp. 2384, 2387, which reads as follows: "If the beneficiary can show that the trustee's estate, as it came into the hands of his assignee, trustee in bankruptcy, receiver, executor or administrator, was *actually increased* by the whole or a definite portion of the misappropriated trust fund, justice demands that he, and not the other creditors, should have the benefit of this increase." In the instant case, the trust company's assets were actually increased by the agent's wrongful and unauthorized act in depositing the money in the trust company's Miscellaneous Account, having withdrawn it from the Alexander account. So far as this transaction is con-

cerned, it had the same effect as if the purchaser of the mortgage had paid cash or given checks drawn upon some other institution.

The appellant's right can not be prejudiced by the contention of the appellee that this matter was simply a bookkeeping transaction. In the case of People v. City Bank of Rochester, 96 N. Y. 32, the bank had discounted certain notes for a firm, a depositor. This firm wished to anticipate the payment of the notes, and gave to the bank its checks for the amount of the notes, which checks the bank received and charged in the firm account, and entries were made in the bank books to the effect that the notes were paid. The firm at the time supposed that the bank held the notes, but they had, in fact, been previously sold by it. Before the notes became due, the bank failed. The firm made an application to the court, requiring the receiver to pay the notes out of the funds in his hands, which the court ordered. The court held that the object of the transaction was to provide a fund for the payment of specific notes; thus a trust was created. The court there said: "From that moment the bank was bound to hold the money for, and to apply it to, that purpose, and no other, or, failing to do so, return it to the petitioner. As to it, the bank was bailee or trustee, but never owner. It is estopped from saying that all this is matter of bookkeeping. It assumed a duty, and the receiver as its representative is bound by it."

After a careful consideration of this record and the able arguments of counsel, we are of the opinion that the appellant is entitled to a preference.

Order of the court below is reversed, and the secretary of banking is ordered and directed to give the appellant's claim a preference in the distribution of the assets of the Manayunk Trust Company. Costs to be paid out of the trust company's estate.

464

DISSENTING OPINION BY KELLER, J.:

The opinion of the court in this case goes beyond the recent decisions of the Supreme Court (Cameron v. Carnegie Trust Co., 292 Pa. 114; Mehler's App., 310 Pa. 25), on which it purports to rely as authority, and runs counter to the rule that has been in force in this State for many years, viz., that a trust creditor, in order to secure a preference over general creditors—and still more, over creditors preferred by statute, such as depositors of a bank—must trace the fund claimed into some specific property, fund, security or account of the insolvent bank, which has passed into the hands of the receiver and the proceeds of which are being distributed. And by 'account' in that connection, is not meant a mere bookkeeping entry on its own books, but a separate and distinct asset, which is not commingled with the general assets of the insolvent bank; such as an account in another bank, or in the hands of a third person; or if an account on its own books, that specific assets or property have been set aside for its payment or protection.

In Cameron v. Carnegie Trust Co., supra, the Ottumwa National Bank sent to the Carnegie Trust Company a note for collection and remittance only. The Carnegie Trust Company collected the note, received the money, and drew a draft on the Colonial Trust Company—where it had sufficient funds on deposit—and sent it to the Ottumwa National Bank. The Carnegie Trust Company failed before the draft was presented to the Colonial Trust Company. The Supreme Court held that the Ottumwa Bank was entitled to be paid in preference to the depositors of the trust company the *money which the latter had received as agent for the bank,* and for which it had given its draft, drawn on another banking institution. By giving its draft on the Colonial Trust Company, for the money which it had received as agent for the bank

and mingled with its other funds, it designated an 'account', which came into the hands of the receiver, separate from its general assets, out of which the trust fund was to be paid.

In Mehler's Appeal, supra, the treasurer of the Dollar Title and Trust Company of Sharon caused the stock of the Mehlers, which had been pledged as collateral security for a loan, to be sold for the account of the Trust Company and the proceeds of the stock were deposited in the Mellon National Bank to the credit of the trust company. The treasurer then embezzled out of the general funds of the trust company the equivalent of the stock so sold. On the insolvency of the trust company the Mehlers were held to be entitled to be paid the proceeds of the sale of their stock which had been fraudulently sold by the treasurer and deposited to the credit of the trust company in the Mellon National Bank, or so much thereof as was represented by the *"lowest balance"* to the credit of the trust company in the Mellon Bank "after the proceeds of the conversion had been deposited therein." There, again, we have a specific fund or account, separate and distinct from the general assets of the insolvent trust company, into which the trust fund was traced.

That is not the situation here. Abbie P. Alexander had two accounts in the Manayunk Trust Company—one a savings account, the other a checking account. They represented no specific items of property, but, by statute, created her a preferred creditor as against the money, checks in course of collection, notes, loans and discounts, bonds, mortgages, real estate and other property constituting the general assets of the trust company. She bought a mortgage from the appellant, Elizabeth T. Reicheldifer for $1,524.50, giving the latter's agent, the Manayunk Trust Company, a transfer of $1,000 from the savings account and a check for

$524.50 on her checking account in said trust company. The trust company charged Mrs. Alexander's savings account with $1,000 and her checking account with $524.50 and credited an account which it carried on its own books as "Miscellaneous Account" with $1,524.50, drew on a check on itself against that account for $1,524.50 and sent it by mail to Mrs. Reicheldifer. She presented it to the trust company for payment, but in the meantime the Secretary of Banking had taken charge of its affairs and the check was not paid. No money, checks, securities or property of any kind were segregated and kept apart in the 'Miscellaneous Account" from the general assets of the trust company, consisting of cash, checks in course of collection, notes, loans and discounts, bonds, mortgages, real estate and other property of the trust company. It was only a bookkeeping transaction on the books of the trust company—a "mere book entry" as referred to by Mr. Justice MITCHELL in Iron City Nat. Bank v. Fort Pitt Nat. Bank, 159 Pa. 46, 51, and commented on approvingly in Union Nat. Bank v. Franklin National Bank, 249 Pa. 375, 385. By a bookkeeping entry, $1,524.50, which was "mixed with a general mass or fund of the same description," (Com. v. Tradesmen's Trust Co., 250 Pa. 372, 95 A. 574) was transferred on the books from Abbie P. Alexander's accounts to 'miscellaneous account,' but no property was actually segregated and identified as belonging to either Mrs. Alexander or 'miscellaneous account.' There was not a penny of cash, or any specific item of property of the trust company that could be separated from the general assets of the latter and truly be said to constitute the 'miscellaneous account.' In this respect, the present case is wholly different from the two Supreme Court cases above cited and relied on by the majority of this court. It brings our case squarely within the decision of the Supreme Court in Freiberg v. Stod-

dard, 161 Pa. 259. There the plaintiff drew certain drafts on a debtor and indorsed them to the order of a bank for collection. The drawee was a depositor in the bank. The drafts were accepted and the account of the drawee charged therewith. The bank, which was insolvent, drew a draft on a bank in another city and sent it to the plaintiff. Before it was presented the bank made an assignment. The opinion of the lower court, which was approved by the Supreme Court, was written by Judge RICE, afterwards President Judge of this court, and in it he said, "But in this case no money was added to the assets of the bank, and no part of the money in bank was separated or set apart or in any way appropriated to the payment of the drafts, and, so far as appears, the assignor did nothing to indicate an intention on his part to treat any portion of the funds in bank as different from the remaining deposits ...... A trust creditor is not entitled to preference over general creditors of the insolvent merely on the ground of the nature of the claim ...... But if we hold to the rule that, to entitle one claiming to be a trust creditor to preference, he must trace the trust money into some specific property, or into some particular fund or account of the assignor with which the latter has mingled it, we think the plaintiffs have failed, because they have not shown that the assignor received any money as the proceeds of the drafts which he added to and mingled with the general mass of deposits in bank, or that any part of the money in bank was ever set apart, or in any manner appropriated to the payment of the drafts." In Cameron v. Carnegie Trust Co., supra, Mr. Justice SIMPSON recognized that the foregoing was still the law, saying "In Freiberg v. Stoddard, 161 Pa. 259, there was no money received by the bank, to whom the drafts were sent for collection, *but only a charging of the amount thereof against the deposit ac-*

*count of the drawer;* [italics ours] and it may fairly be assumed, from the opinion of Judge RICE, which was adopted by this court, that if the bank had actually received money for the drafts, and this had been mingled with its other funds, the drawer would have been entitled to a preference." In Lebanon Trust & Safe Deposit Bank's Assigned Est., 166 Pa. 622, it was held that "where money received by a bank as trustee is not kept distinct nor invested in any specific way, but is mingled with the general mass of money on deposit and used in the general banking business, and there is no means of tracing or ascertaining its identity in any form or species of property, the cestui que trust is not entitled to a preference over general creditors in a distribution of the assigned estate of the bank." This rule is recognized in the very late case of Pittsburgh's Appeal, 316 Pa. 125, where it was held that "trust relationship, alone, does not give priority; that depends on identification of the property: Lifter v. Earle Co., 72 Pa. Superior Ct. 173, 176; Mehler's App., 310 Pa. 25, 29, 164 A. 619." See also Thompson's App., 22 Pa. 16, 17; Com. v. Union Surety & Guaranty Co., 37 Pa. Superior Ct. 179, 183; Groff v. City S. F. & T. Co., 46 Pa. Superior Ct. 423.

It is unfortunate that at the time this transaction occurred the law did not put the appellant on an equality with the depositors. That has been rectified by the Department of Banking Code of 1933, sec. 1011, 3d par. (Act of May 15, 1933, P. L. 565, 614); but under the law then existing she had no priority over general creditors,—and certainly none over depositors—because the transfers from the savings and checking accounts of Mrs. Alexander to the 'miscellaneous account' were merely book entries, and passed to the latter no specific money or property which was separate or distinct from the other assets of the trust company, but only an interest in property, which was

'mixed with a general mass or fund of the same description,' and was incapable of identification. It will not do to speculate what would have been the result if Mrs. Alexander had drawn out $1,524.50 in cash and paid it to the trust company. She did not do it, and we must treat the facts as they are.

Judge LAMBERTON, of the court below, in what I think is a very clear and convincing opinion, has discussed a number of other decisions, which it is not necessary for me to refer to. I think they justify the action of the court below and admit of no other ruling, if the decisions of our Supreme Court are to be followed.

I would affirm the decree.